Charles Bowman, Appellant, v. Lawrence O'Brien et al., Appellees.

Gen. No. 40,892.

Heard in the third division of this court for the first district at the October term, 1939. Opinion filed February 14, 1940. Rehearing denied March 12, 1940.

IRVING G. ZAZOVE and MICON & MICON, all of Chicago, for appellant.

LORD, BISSELL & KADYK, of Chicago, for appellee Guardian Life Insurance Co. of America; GORDON R. CLOSE and HERBERT C. BROOK, both of Chicago, of coun-sel.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the plaintiff from a judgment of not guilty entered, on the verdict of a jury, for the defendant. Plaintiff's motions for a judgment notwithstanding the verdict and for a new trial were overruled. A trial was had on plaintiff's amended complaint which alleges substantially that the defendant Guardian Life Insurance Company owned the premises and leased them to the defendant O'Brien, with the knowledge that intoxicating liquors were sold therein; that O'Brien sold intoxicating liquor to persons who it is alleged assaulted the plaintiff; that the sale of said liquor caused said intoxication and injury to the plaintiff while the plaintiff was a patron in the place of business of the defendant. The action is based on ch. 43, par. 135, sec. 14, entitled "Dram Shops." Ill. Rev. Stat. 1937, sec. 14 [Jones Ill. Stats. Ann. 68.042] provides: "14. Every husband, wife, child, parent, guardian, employer or other person, who shall be in-jured, in person or property, or means of support, by any intoxicated person, or in consequence of the intoxi-cation, habitual or otherwise, of any person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving alcoholic liquor, have caused the in-

toxication, in whole or in part, of such person; and any person owning, renting, leasing or permitting the occupation of any building or premises, and having knowledge that alcoholic liquors are to be sold therein, or who having leased the same for other purposes, shall knowingly permit therein the sale of any alcoholic liquors that have caused, in whole or in part, the intoxication of any person, shall be liable, severally or jointly, with the person or persons selling or giving alcoholic liquors aforesaid, for all damages sustained, and for exemplary damages, . . .''

The second count of the complaint is substantially the same as the first count, except that it names the assailants who were intoxicated.

The defendant O'Brien filed no appearance or answer. The Guardian Life Insurance Company filed an answer admitting ownership of the premises, and knowledge on its part that intoxicating liquors were sold in the premises, and denied the other allegations charged in the complaint.

This action was instituted by Charles and Neta Bowman against Lawrence O'Brien and William Toohill, as operators of a tavern, and the Guardian Life Insurance Company of America, as the owner of the premises, to recover for injuries sustained by each of them while patrons in the tavern. Lawrence O'Brien and the Guardian Life Insurance Company of America were each served.

The Guardian Life Insurance Company became the owner of the premises where the tavern was located in May, 1934, when it took title in lieu of foreclosure, subject to existing leases, one of which was for space in which the tavern in question was located. This lease did not expire until May 31, 1936, and named as lessee one John Krohmer, who assigned it in August, 1933 to one Edw. M. Spencer. The lease prohibited the lessee or his assigns from assigning the lease or subletting the premises without first obtaining the written consent of the lessor.

Plaintiff and his wife testified, in substance, that they, together with Malone, entered the tavern a little after 1:00 o'clock in the morning of March 18, 1936; that the place was crowded and that when they sat down there were five men at an adjoining table; that these men were drunk, hollering and swearing; that after their being there about an hour the plaintiff went to the washroom, and when he returned his chair was gone and his wife told him that one of the men at the adjoining table had taken it; that he asked the man if he could have the chair back and the man said "Yes," and got up and handed the chair to the plaintiff and he turned it around and started to sit down; that one of the men at the table said, "You ain't going let him get away with that are you? Sock him"; that the man struck plaintiff just as he was sitting down and knocked him to the floor and then kicked him several times; that everyone jumped up and there was a big commotion and someone else ran over and kicked at the plaintiff.

The plaintiff testified that he had four drinks of whiskey and one of beer in the tavern; that he was feeling the effect of his drinks; that he saw the five men have about 10 drinks of whiskey and canned beer. His wife testified that there were more people in the tavern than there were chairs and she saw each of the men have at least 7 or 8 drinks of whiskey.

George Malone testified that he entered the tavern about 1:15 or 1:30 o'clock in the morning and that the tables were well filled, but there was no one at the bar; that they were seated at a table in about the middle of the tavern; that the plaintiff was seated on the south side of the table, his wife on the east and he on the west; that there were four or five men at an adjoining table to the southeast almost back of the plaintiff and a little to the right; that one of them was walking or staggering around and did not seem to have a chair; that he saw each of them drink five or six whiskies and beer, whiskey for the drink and beer at the same time

in small straight-up glasses for a wash down; that the man who was standing took the plaintiff's chair; that the plaintiff started to sit down when the man struck him on the side of the head and in the face; that when plaintiff went down, all the men raised up as though they wanted to jump on him, and the man who struck him jumped up and kicked him, and another one said, "Let him have it" and called the plaintiff names. He testified on cross-examination that the men were talking to each other, laughing and making a lot of noise; that there was no dancing or entertainment in the tavern; that he had no argument or fight and no one hit him; that the man gave plaintiff the chair without making any comment—just handed it to him.

The plaintiff contends that certain of the exhibits were incompetent and irrelevant to the issue and in violation of the rules of evidence, and calls the court's attention to the case of *Baker & Reddick v. Summers*, 201 Ill. 52. The court in that case said:

"On the trial John Lisenby, president of the town board of Weldon, was called and examined as a witness on behalf of plaintiff, for the purpose of showing that he had called the attention of the defendant Baker to the fact that a gambling room was being conducted in the place where the killing occurred. The defendants objected to the questions put to the witness on that subject, but their objections were overruled, and he testified that he had called Baker's attention to the fact a year or more before Summers was killed." The court further said: "The fact that Baker, who owned the building, knew that there was a gambling room run by Greenwood up-stairs, neither tended to prove the alleged sale or intoxication or that such intoxication was the cause of Summers' death. It could have had no other purpose or effect than to raise a prejudice in the minds of the jury against the defendants concerning a separate and distinct matter, on the ground that one of them assented to the use of his property for the unlawful purpose. The ruling was wrong."

Plaintiff contends that a written contract two years prior to the time of the happening did not tend to prove or disprove the issue as to whether the plaintiff was injured in his person by the consequent intoxication of a patron of the tavern, and suggests further that using the reasoning advanced in the *Baker* case, the fact that the defendant made a contract to adjust financial differences between itself and the former owner or started forcible entry and detainer suits against its tenant, neither tended to prove nor disprove the issues, and further, that the evidence offered by the defendant, over the objection of plaintiff's counsel, that the building had been razed, did not tend to prove the issues involved in the instant case, and contends that when counsel for the plaintiff objected to the introduction of the exhibits, this damaging colloquy took place in the presence of the jury, quoting the following:

"Mr. Zazove: I object to them as being incompetent, irrelevant and immaterial, and not bearing on the issues in the case at all.

"The Court: Overruled. One of them was June 2, 1936, wasn't that after this accident happened?

"Mr. Close: Yes, your Honor.

"The Court: How is that material?

"Mr. Close: That simply shows that is a proceeding that was filed the day after the lease expired and resulted in final eviction.

"The Court: Oh, alright. They may be introduced."

Then the contention is made that this statement of the court was prejudicial; that it amounted to an expression by the court of an opinion in the presence of the jury; that because a proceeding was filed after the lease expired, which resulted in a final eviction, made the evidence competent, thereby emphasizing the importance of that prejudicial evidence.

Defendant's reply is that it admitted ownership of the premises at the time the plaintiff was injured and that it had knowledge that alcoholic liquors were sold thereon, but it specifically denied that it permitted

O'Brien and Toohill to occupy the premises or that their sale of liquor was with its knowledge, consent and permission, and that the purpose of introducing in evidence the agreement whereby it acquired title to the premises in lieu of foreclosure subject to existing leases, the deed conveying the title to defendant, the lease in force when the defendant acquired title and which expired in May, 1936, the records of the three forcible detainer proceedings brought by the defendant against John Krohmer and Edward M. Spencer and the testimony that the building had been razed, was to prove that the sale of liquor by O'Brien and Toohill in the tavern was not with its knowledge, consent or permission, as alleged by plaintiff. The former filed no answer. The Guardian Life Insurance Company appeared and defended. Neta Bowman dismissed her suit, and upon a trial, a jury returned a verdict of not guilty as to the defendant. As we have stated, motions for a judgment notwithstanding the verdict and for a new trial made by Charles Bowman were overruled and a judgment was entered upon the verdict.

It appears from this record that the plaintiff did not object to the introduction in evidence of the deed conveying title to the defendant, or the lease dated May 10, 1933 between Chicago Turngemeinde, as lessor, and John Krohmer, a lessee, covering the premises at 820 North Clark street, Chicago, Illinois, from June 1, 1933 to May 31, 1936, nor does it appear from the abstracts that we have before us that there was any objection by the plaintiff to the quitclaim deed from the Chicago Turngemeinde to the Guardian Life Insurance Company, grantee; nor objection by the plaintiff to the introduction of certain forcible entry and detainer proceedings in the municipal court of Chicago, wherein the Guardian Life Insurance Company brought suit against John Krohmer and Edw. M. Spencer; nor the fact that the building that was formerly upon the premises had been razed, and when we come to consider the instruction which was given by the court, we find that

defendant's instruction No. 7 was modified by the court by striking out the following words:

"(5)   That the defendant, The Guardian Life Insurance Co. of America owned the premises upon which the tavern operators conducted their tavern and that the defendant The Guardian Life Insurance Co. of America permitted said defendant tavern operators to operate their tavern on said premises." and when we consider this modification, together with the fact that the exhibits complained. of were not in the possession of the jury when it retired to consider the verdict, it is clear that the jury did not consider these exhibits that were objected to by the plaintiff, and the trial court held that the proving of this issue under the circumstances of the case was not a defense and refused to permit this issue to go to the jury over the defendant's objection.   As to the other exhibits, which counsel seems to consider as erroneously admitted by the court, they were not really before the jury and therefore were not considered by them when they retired to pass upon the questions involved in the litigation.   We are not prepared to say that under the record as we have it before us that there was such error which, of itself, would justify a reversal of the judgment of the court.

There is also the contention by the plaintiff that the court erred in submitting to the jury a form of verdict finding the defendant not guilty.   Upon an examination of the record it does not appear what form of verdict, if any, the court submitted to the jury.   Therefore, by reason of failure to abstract these verdicts the plaintiff has waived the right to complain.   It does not appear that the plaintiff in the motion for a new trial complained as to the verdicts that were submitted to the jury, for the motion for a new trial has not been abstracted for this purpose.

The plaintiff also complains that the court in giving the following instruction erred:

"The preponderance of evidence in a case is not alone determined by the number of witnesses testifying

to a particular fact or state of facts. In determining on which side the preponderance of evidence is, the jury should not only take into consideration the number of witnesses testifying to a particular fact or state of facts; but they should also take into consideration, so far as shown by the evidence, the opportunities of the several witnesses for seeing or knowing the things about which they testify; their conduct and demeanor while testifying, their interest or lack of interest, if any, in the result of the suit; the probability or improbability of the truth of their several statements, in view of all the evidence, facts and circumstances proved on the trial; and from all these facts and circumstances, and a full consideration of all the evidence, determine upon which side is the greater weight or preponderance of the evidence.''

The plaintiff states that while this instruction is an abstract legal proposition, the practice of giving abstract propositions of law has been repeatedly disapproved because of the tendency of such charge, not made applicable to the evidence, to mislead the jury. This instruction has been passed upon a number of times by courts of appeal, and it is necessary to consider whether the giving of this instruction to the jury in this case was erroneous because not applicable to the facts and circumstances in evidence. The defendant in discussing the objections offered by the plaintiff said: ''The instruction, if anything, was unduly favorable to plaintiff since it told the jury that in determining where the preponderance lay they could consider the number of witnesses testifying to a particular fact or state of facts, and only plaintiff was able to produce witnesses as to the occurrence,'' and then continues by saying that the plaintiff also contends that the instruction was objectionable because the jury was told that in weighing the testimony of witnesses they could consider ''the probability or improbability of the truth of their several statements, in view of all the evidence,

facts and circumstances,'' and then he states: ''There were no facts and circumstances proved on the trial, and defendant had no right to have such an instruction.'' However, the defendant calls the attention of the court to authorities holding that the prevailing party is entitled to all the favorable inferences legitimately arising from the evidence, and then goes on to cite the case of *Dick v. Zimmerman,* 105 Ill. App. 615, where the court in affirming the judgment for appellee, said: ''When an appellate court is asked to set aside a verdict the prevailing party is entitled to all the favorable inferences legitimately arising from the evidence. *Hess v. Rosenthal,* 55 Ill. App. 324,'' and also cites case of *Leeper v. Gay,* 253 Ill. App. 176.

As we understand this record the question before the jury was as to whether the plaintiff was entitled to recover if the jury was satisfied that his injuries were provoked by him or were due to his own negligence, and as to whether he was under the influence of liquor, according to his own testimony. Defendant cites a case wherein the question was whether a plaintiff can recover damages under the Dramshop Act for bodily injuries sustained as a result of his own intoxication. The case is *People for use of Lenand v. Linck,* 71 Ill. App. 358, which is an action brought on a saloon keeper's bond by the plaintiff to recover for injuries sustained by him. The court in that case said:

''The only question for our decision is whether one who was an active and willing agent in procuring his own intoxication may recover upon a saloon keeper's bond for injuries caused by such intoxication. We do not think the statute was intended to cover any such case, but rather those cases where parties have been innocently injured by the wrongful act of the principal in the bond.

''The party complaining and seeking damages must be free from complicity in procuring the intoxication. Such appears to be the view of courts of last resort in

this State, Iowa and Michigan, although in none of the reported cases were the facts the same as in this case. In each of those cases, the complaining party was seeking damages for injuries caused by the intoxication of another. *Reget v. Bell*, 77 Ill. 593; *Hays v. Waite*, 36 Ill. App. 397; *Engleken v. Hilger*, 43 Iowa 563; *Rosecrants v. Shoemaker*, 60 Mich. 4.

"In Iowa and Michigan, where the statutes giving a right of action to persons injured by reason of the intoxication of another are similar to ours, it is held that the wife can not recover damages from a saloon keeper who has caused the intoxication of her husband, if she herself encouraged or requested the sale of the liquor to her husband. Such holdings were based upon the ground that she was not an innocent injured party. In *Reget v. Bell, supra,* our Supreme Court has gone even farther, and held a wife would be precluded from a recovery if she had it in her power to deprive her husband of the use of the whiskey which caused his intoxication by breaking the jug or pouring out its contents, and failed to exercise it." Citing also *Buntin v. Hutton*, 206 Ill. App. 194; *Bennett v. Auditorium Bldg. Corp.*, 299 Ill. App. 139; *South Chicago City Ry. Co. v. Dufresne*, 200 Ill. 456; *Newell v. Cleveland, C., C. & St. L. Ry. Co.*, 261 Ill. 505. Upon the facts as they appear in this record there seems to be authority that a plaintiff may not recover under the Dramshop Act for personal injuries, where such injuries were due to an act of provocation on his part. *Hays v. Waite*, 36 Ill. App. 397. So when we consider the question here involved, this instruction was not an erroneous one and no doubt was proper under the facts and circumstances as they appear in the record.

The plaintiff contends that while jurors are the judges of facts, they must act upon reason and can only decide facts in dispute. A jury cannot arbitrarily reject the testimony of a witness which is uncontradicted either by positive testimony or circumstances

and is not inherently improper, citing the case of *Porter v. Industrial Commission,* 352 Ill. 392, wherein the court said: "The evidence shows that the impaired physical condition of the defendant in error was the result of the injury. No countervailing evidence was offered by the plaintiff in error. The testimony of unimpeached witnesses, not contradicted by positive testimony or by circumstances, and not inherently false or improbable, may not be rejected." Plaintiff cites also the case of *Kelly v. Jones,* 290 Ill. 375.

There is no question in the minds of the court that the jurors are the judges of the facts, and as we have indicated, the question of whether the plaintiff brought about the assault by his own act was clearly a question for the jury to pass upon, and having passed upon that question, we cannot agree with the contention of the plaintiff that the evidence is such that the jury would be required to return a verdict of guilty—where the question involved is as to whether the plaintiff is entitled to a verdict under the law, and as we have indicated, there is a question as to whether the plaintiff is entitled to a verdict where he brought about the occurrence which resulted in his injury.

After a consideration of the objections that were offered by the plaintiff, we believe the court did not err in entering judgment on the verdict of the jury finding the defendant not guilty. For the reasons stated, the judgment is affirmed.

*Judgment affirmed.*

DENIS E. SULLIVAN, P. J., and BURKE, J., concur.