Alvin Douglas et al., Plaintiffs. Thomas Burget, Appellee, v. Athens Market Corporation and Chicago Title and Trust Company, Appellants.

Gen. No. 42,499.

Opinion filed June 30, 1943.

LORD, BISSELL & KADYK, of Chicago, for certain appellant; LEONARD F. MARTIN, BRUCE S. PARKHILL and GAYNOR K. RUTHERFORD, all of Chicago, of counsel.

SAMUEL A. STRAUSS, of Chicago, for certain other appellant.

H. H. Patterson and George W. Hansen, both of Chicago, for appellee; Edmund C. Maurer, of Chicago, of counsel.

Mr. Presiding Justice Burke delivered the opinion of the court.

In a complaint filed in the superior court of Cook county, Alvin Douglas, Thomas Burget, Willie Burget, Maybelle Burget, Ross Burget, Carolyn Douglas and Dolores Douglas, a minor by Carolyn Douglas, her mother and next friend, sought to recover damages under the Illinois Liquor Control Act for personal injuries suffered by Thomas Burget and Alvin Douglas, naming the Athens Market Corporation and Chicago Title & Trust Company, a corporation, as defendants. On motion of plaintiffs the case was dismissed with prejudice as to all plaintiffs except Alvin Douglas and Thomas Burget. Issue was joined and the case was tried before the court and a jury, resulting in a verdict against both defendants in favor of Thomas Burget for $20,000 and in favor of both defendants and against Alvin Douglas. The ruling on the motion by the defendants for a directed verdict was reserved. Motions by the defendants for judgment notwithstanding the verdict and for a new trial were denied and judgment was entered on the verdict, to reverse which this appeal is prosecuted by defendants. No appeal has been taken by Alvin Douglas. For convenience, we will refer to Thomas Burget as the plaintiff.

The first criticism leveled at the judgment is that the trial court erred in refusing to direct a verdict for defendants and in refusing to enter a judgment in their favor *non obstante veredicto*. They assert that plaintiff was guilty of contributory negligence as a matter of law in purchasing liquor which contributed to cause the intoxication of his alleged assailant. Plaintiff maintains that he was not guilty of contributory negligence as a matter of law and that the ques-

tion was properly left to the jury. We are, therefore, confronted with the question whether the evidence, giving plaintiff the benefit of all facts proved and all just inferences therefrom, presented an issue of fact for the jury. On Saturday evening, March 18, 1939, an affray took place in a tavern located at the northwest corner of Harrison and Halsted streets, Chicago, during the course of which plaintiff was struck in the left eye, necessitating its removal the following Monday morning. The tavern was operated by the Athens Market Corporation and the Chicago Title & Trust Company was the owner and lessor of the premises. Harrison street runs in an easterly and westerly direction and Halsted street runs in a northery and southerly direction. At the time of the occurrence plaintiff was living at the Lake Menard Hotel, 336 North Menard avenue, Chicago, and was engaged in the business of hauling long distance freight for the Mutual Trucking Company in trucks leased by him to that company. His garage was located on the south side of Harrison street, a few doors east of Halsted street. The tavern was located just west of a grocery and market, which was operated by the Athens Market Corporation and was separated from the market by a glass partition. The tavern had two doors opening on Harrison street, one being at the east and the other at the west end of the bar. The bar ran east and west along the south, or Harrison street, side of the tavern. Along the west side of the tavern were three or four booths with hooks on the partitions between them to hang coats. The tavern also served meals and in the center of the room were some tables. On the north side of the room a swinging door opened into the kitchen. At the time of the trial plaintiff was 31 years of age. Plaintiff introduced six witnesses, namely, James Humphreys, a safety inspector of trucks for Midwest Haulers, Inc., and Mutual Trucking Company, who lived at the same hotel as plaintiff, Arthur Scott Groves, a truck dis-

patcher for the Midwest Haulers, Inc., and Mutual Trucking Company, Alvin Douglas, a truck driver for Mutual Trucking Company, two doctors and himself. Seven witnesses testified on behalf of defendants, namely, Frederick Julian, a court reporter, Tom Salapatas, a fruit and vegetable salesman, Gus Manos, a waiter and bartender at the tavern, Nick Psaltis, a waiter in the dining room at the tavern and also a cook in the kitchen, Thomas Sackellson, referred to in the testimony as Tom, or Tom the Greek, the assailant, who worked at a fruit auction house, John Rogers, a real estate agent, and Nicholas Choconas, secretary of the Athens Market Corporation, and who managed the grocery store.

Plaintiff testified that he was in the tavern nearly every day that he was in town; that he had his meals there "most every day"; that the drivers and mechanics from the garage ate there; that on the day of the occurrence he came to the tavern about 11:00 a. m.; that he had a cup of coffee and remained there about 15 minutes; that he then went to his garage to supervise the servicing of trucks; that he was not due to go out on a trip until Sunday night; that he returned to the tavern about 3 o'clock in the afternoon; that he ate there; that other truck drivers were there and some of them cashed their checks there. He did not rcall whether anyone went with him to the tavern, but said Humphreys was there when he went in, and that later Douglas came in and joined plaintiff, Humphreys and a couple of truck drivers at the bar. Later Groves joined them and about 5:30 or 6 o'clock Tom Sackellson came in with his sister and brother-in-law. Plaintiff had known Sackellson before, having frequently seen him in the tavern. Humphreys also knew him. Neither Douglas or Groves had known him previously. They were all drinking beer and whiskey and each took his turn buying a round of drinks for the group. Witness testified that he, Douglas, Sackellson and the

others were sitting and drinking together as long as witness was there, all buying a round of drinks for the others; that Sackellson bought drinks for him and that he (plaintiff) bought a round of drinks; that Tom drank beer and had a couple of shots of whiskey; that Tom had several drinks in the tavern that night; that he did not recall how many drinks he saw sold to him or taken by Tom while he (plaintiff) was there "because we were buying back and forth." Witness further testified that he left the tavern about 7 o'clock, or shortly after that, and went back to his garage where he got some trucks ready to go out that night, and that he left Tom and the other men at the bar. Witness stated that Tom became intoxicated; that it was between 6 and 7 o'clock when he first discovered that Tom was intoxicated; that Tom showed it by the loud tone of his voice and actions. Witness testified that he was not getting drunk, but admitted in his deposition, taken on October 23, 1939, he had answered that at the time he noticed Tom getting drunk "we was all getting drunk"; that he did not see Tom or the other men until he came back to the tavern at about 10:00 p. m., approximately three hours later; that he knew nothing about an altercation between Tom and the other truck drivers that had occurred after he had left the tavern. Witness stated that he returned to the tavern about 10:00 p. m. and that he was assaulted two or three minutes after he came in. He had just gone back to the rear of the tavern near the kitchen to hang up his coat, when Tom, with several men following him, rushed in the door. Tom had a bottle in his hand and hit Douglas over the head and came directly at plaintiff and struck him with the bottle which was then broken and plaintiff's eye was badly cut. Plaintiff was knocked to the floor and crawled into the kitchen where one of the cooks gave him a towel to hold over his eye. Plaintiff remained conscious, but after he was hit did not see any of the fighting that

went on in the tavern. He was taken in a cab to the West Side Hospital. Humphreys and Tom Sackellson went with him in the cab. From there he was taken to the County Hospital. The next day, Sunday, his eye was examined and on Monday the eye was removed. He remained in the hospital 16 days.

There is a conflict in the testimony as to the exact time of the occurrence. Plaintiff testified that he returned to the tavern between 9 and 10 o'clock, but did not recall what time the fight broke out but said it was not more than two or three minutes after he returned to the tavern. Humphreys and Groves, testifying for plaintiff, said the fight happened around 10 o'clock. Defendants' witness Manos, the bartender, says it was about five or ten minutes after 11:00 o'clock; Psaltis, the waiter, that it was around 11 or 11:30; Sackellson, the alleged assailant, testified he did not know exactly but would say it was about 11:15; Salapatas, who came in around 10 or 10:30 with Rogers and a Mr. Kokinos to eat supper and were sitting at the table where they were waiting to be served their meals, thought it happened around 11 o'clock. Plaintiff had no drinks in the two or three minutes that elapsed from the time he came in until he was hit. Tom was at the bar drinking practically all of the time from 7:00 p. m. on until plaintiff was injured, according to Humphreys, Groves and Douglas. A bartender at the tavern continued to sell liquor to Tom and the other men at the bar from 7:00 p. m. until the assault occurred. There was testimony of an altercation between Groves, Douglas and Tom and all of them went out on the sidewalk. Plaintiff was not present at this altercation and knew nothing of it. There was a fight on the sidewalk. After this sidewalk fracas Tom did not return to the tavern, but the other men did. There was evidence that about 20 minutes after the sidewalk altercation plaintiff came into the tavern and that Tom was not in the tavern at that time. There was evidence that about

two or three minutes after plaintiff came into the tavern some boys or men came in with Tom in the lead, and that Tom had a bottle in his hand with which he struck Douglas, knocking him to the floor, and that Tom then struck plaintiff.

Sackellson testified that he left the tavern with his sister and brother-in-law and attended a dance on the second floor of the same building; that when he came back to the tavern from the dance and joined Humphreys, Groves and Douglas, plaintiff was there, and that plaintiff bought him (Sackellson) a drink at that time. Manos, the bartender, said Burget was there at that time, and that they were all buying drinks for the bunch. Psaltis said Burget was there then and that they were all drinking together. Psaltis and Rogers, who came in together around 10 or 10:30, prior to the fight, testified that Burget, Sackellson and others were drinking at the bar when they came in. Choconas, the grocer, looking through the glass partition between the grocery store and the tavern, saw Burget sitting at the bar drinking with Sackellson and a couple of other men about 10:30 as he was locking up the grocery department. Sackellson testified that he did not take any liquor with him from the tavern to the dance hall, nor did the tavern serve any drinks in the dance hall. There was a bar in the dance hall but there was no evidence that Sackellson had anything to drink there. He further testified that he did not hit Burget, in which he is corroborated by Manos. Humphreys testified that when the men rushed in the doors he saw Tom start for Burget. Groves testified that he saw Tom among the crowd that came in but did not see what happened to Douglas or Burget. Douglas testified that when Tom came in he made for Tom and that Tom hit him, Douglas, over the head with the bottle. Humphreys testified that on the way to the hospital in the cab Tom said to plaintiff: "I am sorry I hit you, it wouldn't have happened if I had not been intoxicated."

Plaintiff testified that Tom came to see him at the hospital the day after the accident and said: "I am sorry I hit you. It wouldn't have happened if I hadn't been drunk." On cross-examination, Sackellson denied making these remarks to Burget or Humphreys. Plaintiff admitted having answered on his deposition that at the time of the occurrence he was intoxicated. He stated that Tom was at the bar shortly before the fight started and that he did not "just exactly remember what went on there," because he had plenty to drink. When asked whether on his deposition he testified that he went back to the tavern the third time some time around 9 o'clock; that Groves, Douglas and Humphreys and Tom, the Greek, were there then; that all of them drank whiskey again; that everybody was buying each other drinks; that "each fellow would buy his turn or, that is—it does so happen. This Greek and myself I know for sure bought drinks, and the other fellows of course"; that he bought Sackellson a drink and Sackellson also bought him drinks, Burget answered: "I don't remember that, the last time I was there." A court reporter who took his deposition testified from his original notes that Burget on the taking of the deposition made the answers about which he was asked at the trial.

There was evidence which justified the jury in finding that Tom Sackellson, while intoxicated, assaulted plaintiff, thereby causing the loss of the latter's eye, and that the alcoholic beverages purchased from the Athens Market Corporation brought about the intoxication of Sackellson. In considering the propriety of the allowance of a motion for a judgment notwithstanding the verdict, we accept the testimony favorable to plaintiff that when he returned from his place of business in the evening he did not know about the altercation, or about the brawl on the sidewalk, that before he had an opportunity to resume drinking Tom and the other men rushed in from the street, at which time

48

Douglas and then plaintiff were assaulted by Sackellson. Nevertheless, defendants insist that judgment *non obstante veredicto* should be rendered in their favor because plaintiff was guilty of contributory negligence as a matter of law in purchasing liquor which contributed to cause the intoxication of Sackellson. Plaintiff maintains that he was not guilty of contributory negligence as a matter of law and that the question was properly left to the jury. He also argues that contributory negligence is not a defense to an action under the Dram Shop Act. Plaintiff states that he had not been in the tavern for three or four minutes prior to the assault and had bought but one round of drinks for his assailant and his friends; that he knew nothing of the occurrence because he was at work in his garage from 7:00 p. m. until shortly before he was hit; that the bartender at the tavern continued to sell liquor to the assailant and the other men at the bar from 7:00 p. m. until the assault occurred, and he inquires whether it can be said that he has no rights under the Dram Shop Act because three or four hours prior to the time he was injured, he purchased one round of drinks, one of which was consumed by his assailant. He also asks whether a tavern keeper may sell and continue to sell intoxicating liquors to men who are boisterous and apparently intoxicated over a period of three or four hours and then escape liability for an assault by one of the patrons who has become intoxicated, the assault being committed upon one who has just entered the tavern and who has not been there for three or four hours before. Plaintiff maintains that it is for the jury to say whether or not the purchase of an amount of drinks prior to 7:00 p. m. contributed to cause the intoxication of plaintiff's assailant some time after 10:00 p. m., or according to defendants' witnesses, after 11:00 p. m., and that this precise point was presented to the jury for determination by an instruction submitted by defendants. Plain-

tiff testified that he as well as the others bought a round of drinks, but that he did not recall just how many drinks he saw sold or taken by Sackellson while he was there "because we were buying back and forth." Plaintiff's witness Douglas testified that he, plaintiff, Tom and the other fellows were drinking together at the bar, each one taking turns buying a drink. It is undisputed that when plaintiff left the tavern about 7:00 p. m. Tom had then become intoxicated and plaintiff knew he was intoxicated. At the time plaintiff left the tavern Tom was still there and he was drinking with Humphreys, Groves and Douglas. We find that Tom was on one continuous spree from the time he became intoxicated while drinking with plaintiff earlier in the evening until the assault. We agree with defendants that the only possible conclusion that can be reached from the evidence is that the liquor purchased for Tom by plaintiff contributed to Tom's intoxicated condition at the time of the injury. There is no evidence that Tom had anything to drink before he came into the tavern around 5:30 or 6:00 p. m. with his sister and brother-in-law and joined plaintiff and his crowd at the bar.

In support of his argument that contributory negligence is not a defense under the Dram Shop Act, plaintiff cites *Wall v. Allen,* 244 Ill. 456; *O'Connor v. Rathje,* 368 Ill. 83; *Garrity v. Eiger,* 272 Ill. 127; *Hyba v. C. A. Horneman, Inc.,* 302 Ill. App. 143, and other cases. We have read these cases and are of the opinion that they do not support the principle contended for. Section 14 of Article VI of the Dram Shop Act (sec. 135, ch. 43, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 68.042]) affords a right of action to every person who shall be injured by any intoxicated person, or in the consequence of intoxication, habitual or otherwise, against any person or persons who shall by selling or giving alcoholic liquor, have caused the intoxication, in whole or in part of such person, and also imposes

a liability on any person owning, renting, leasing or permitting the occupancy of any building or premises, and having knowledge that alcoholic liquors are to be sold therein, or, who, having leased the same for other purposes shall knowingly permit the sale therein of any alcoholic liquors that have caused in whole or in part the intoxication of any person. In an action based upon this section a plaintiff is not required to make any showing of negligence. All he is required to do is to prove that the section was violated. Defendants argue that plaintiff was guilty of contributory negligence as a matter of law in purchasing liquor which contributed to cause the intoxication of his alleged assailant. In the case of *Hays v. Waite*, 36 Ill. App. 397, the court said (400):

"The courts have repeatedly had occasion to consider the very question involved in this record, and we know of no case where any person has been permitted to recover from saloonkeepers for injuries received at the hands of intoxicated persons under similar statutes to our own, where the person who had received the injury had been an active agent in causing the drunkenness."

We do not believe that this states a rule of contributory negligence. Contributory negligence implies that the action is predicated upon negligence. The action in the instant case is not predicated upon negligence, but upon violation of the Dram Shop Act. It is the law of this State that a plaintiff who participates in bringing about the intoxication of another, whose intoxication causes him to injure the plaintiff, may not recover. *Forsberg v. Around Town Club, Inc.*, 316 Ill. App. 661; *James v. Wicker*, 309 Ill. App. 397; *Bowman v. O'Brien*, 303 Ill. App. 630; *People v. Linck*, 71 Ill. App. 358; *Reget v. Bell*, 77 Ill. 593. At the time Sackellson joined the plaintiff and his friends, he (Sackellson) was sober. Plaintiff participated in the purchase of rounds of drinks for all of the party,

including Sackellson, and at the time plaintiff left the party to go to his place of business, Sackellson was intoxicated and continued to drink intoxicating liquors in the same tavern. Shortly after the return of plaintiff, about three hours having elapsed, plaintiff was assaulted. It is apparent that Tom did not become sober during the time plaintiff was absent. It is clear that plaintiff was an active participant in causing Sackellson's intoxication. We agree that the record presented a case where the court was required as a matter of law to direct a verdict on the ground that plaintiff was an active participant in causing his assailant's intoxication, and that it is now our duty to direct the entry of a judgment *non obstante veredicto* for the defendants and against plaintiff. We have read the case of *Lester v. Bugni,* 316 Ill. App. 19, in which a judgment based on the Dram Shop Act was sustained in favor of a 17 year old boy. In that case there was evidence that the boy participated in the purchase and drinking of some of the liquor, but the circumstances were such as to make the case clearly distinguishable from the case at bar and from other cases in which recovery has been denied because of such participation.

Because of the views expressed, it is unnecessary to consider the remaining points advanced by defendants, namely that the judgment is against the manifest weight of the evidence and that the judgment is excessive. For the reasons stated, the judgment of the superior court of Cook county is reversed and the cause remanded with directions to enter a judgment for costs notwithstanding the verdict in favor of defendants and against plaintiff.

*Judgment reversed and cause remanded with directions.*

HEBEL, J., concurs.

MR. JUSTICE KILEY dissenting: The majority opinion decided that the trial court committed error by refusing to enter judgment for defendant notwithstanding

the verdict in favor of plaintiff, because he was an active participant in causing Sackellson's intoxication.

Taking the evidence and proper inferences most favorable to plaintiff, as we must on the vital point, we would have to assume that plaintiff came to the tavern in the forenoon for breakfast, went to his nearby place of business, worked until 3 o'clock in the afternoon, returned then to the tavern and remained drinking with friends until about 7 o'clock; that Sackellson joined the group about 5:30 or 6:00 o'clock; that plaintiff left about 7:00, returned to work leaving the others in the group at the tavern; and that he again returned to the tavern about 10:00 o'clock and, after hanging up his coat and before having had a drink, Sackellson charged into the tavern and assaulted him. According to his testimony, he purchased a drink for his assailant in the hour or hour and a half before 7:00 o'clock. Because of this fact the majority opinion applied the general statement of law that plaintiff having participated in causing Sackellson's intoxication, he was guilty of contributory negligence and cannot recover. My view is that that statement made in *Forsberg v. Around Town Club, Inc.,* 316 Ill. App. 661, is misleading as its application here shows. The authorities given in the *Forsberg* case for the statement are *Hays v. Waite,* 36 Ill. App. 397 and *Bowman v. O'Brien,* 303 Ill. App. 630. In those cases the assault was the final link in an unbroken chain of events in which assailant and plaintiff were associated. It is interesting to note that in the *Hays* case the court observed that Hays was an active agent in keeping his assailant intoxicated *until* the assault occurred. In the *Bowman* case this court held that plaintiff could not recover because his injuries were due to an act of provocation on his part. The three cases mentioned, and *James v. Wicker,* 309 Ill. App. 397; *People v. Linck,* 71 Ill. App. 358 and *Reget v. Bell,* 77 Ill. 593, are cited in the majority opinion as authority for the statement of law applied.

In the *Wicker* case, there was the same unbroken chain of circumstances as were found in the facts of the *Forsberg, Hays* and *Bowman* cases, and this court said that plaintiff there was not an innocent person who alone was entitled to recover under the act. Had Burget been assaulted before leaving at 7 o'clock, so that the act was connected with the drinking which preceded his leaving, in which he and his assailant participated and during which plaintiff bought a drink, the *Hays, Bowman, Wicker* and *Forsberg* cases would apply in defendant's favor. In the *Linck* case the injured party procured his own intoxication and sought to recover damages for injuries which resulted, and the court said the statute was intended to cover only those innocently injured, but then went on to say that the party complaining must be free from complicity in procuring the intoxication. In the *Reget* case a widow whose husband's death was caused by drinking, sought to recover and the court found she could have broken the jug of whiskey at her husband's bedside and so have prevented his fatal intoxication and concluded she was instrumental in bringing the loss on herself and a willing party to her husband's conduct. In the *Forsberg* case, following the general statement alluded to, the opinion concluded with the specific finding that plaintiff was not such an innocent suitor as the act contemplated.

Consideration of these cases leads me to the conclusion that the true test is whether the plaintiff in any case was an innocent party, or whether his conduct was wrongful and contributed to bringing about his injuries.

Giving plaintiff the benefit of proper inferences, we may say that when he left at 7 o'clock to work for three hours presumably he was not intoxicated, and while when he left Sackellson had grown boisterous, that fact may have accelerated plaintiff's departure; and that he did not know when he returned to the tavern

at 10:00 o'clock that Sackellson was still about the tavern, and that plaintiff relied upon the tavern having long since ceased to sell intoxicating liquor to Sackellson. The assailant was not in the tavern when plaintiff returned at 10 o'clock. Had he been and had plaintiff known it when he entered, and had plaintiff observing Sackellson's drunken state arranged to stay or resume drinking with him, or, seeing Sackellson's condition had not sought to evade him, plaintiff would not be an innocent party. That is not the case here.

It is my opinion that it cannot be said as a matter of law that the interlude between 7:00 and 10:00 o'clock, during which it appears that Sackellson's boisterous mood grew into the fighting, dangerous one, was not sufficient to break the chain of events in plaintiff's favor; and that, consequently, the question of plaintiff's innocence was for the jury.