**Caroline Kiriluk, Appellee, v. Isadore Cohn and Sam Cohn d/b/a Northwestern Liquor Company, Appellants.**

**Gen. No. 47,091.**

First District, Second Division.

January 7, 1958.

Released for publication April 2, 1958.

387

Lord, Bissell & Brook, of Chicago (Edwin S. Mc-Keown, Richard Valentine, and Richard E. Mueller, of counsel) for appellants.

Joseph Barbera, of Chicago (Charles D. Snewind, of counsel) for appellee.

PRESIDING JUSTICE KILEY delivered the opinion of the court.

This is an action under the Dramshop Act (Ch. 43, § 135, et seq., Ill. Rev. Stat. 1949), by a widow, to recover damages for loss of support as a consequence of the intoxication and death of her husband, whom she shot and killed. The verdict and judgment were for plaintiff for $10,000. Defendants have appealed.

The defendants pose the issue here dramatically as follows: "As a matter of law it is improper to give the plaintiff a $10,000 reward for shooting her husband." This over simplification begs the real question, whether the trial court erred in refusing to direct a verdict for defendants on the ground that plaintiff was not an "innocent suitor" within the meaning of the Dramshop Act.

On this question of law we take only the evidence favorable to plaintiff, draw inferences therefrom

most strongly in her favor, disregard contrary and contradictory evidence, and decide whether there is any evidence to show that she was entitled to recover. Hunter v. Troup, 315 Ill. 293; Mahan v. Richardson, 284 Ill. App. 493.

The decedent was an habitual drunkard and had been drinking heavily for about ten days and nights before August 23, 1949. When drunk he "slapped" plaintiff "around" and a few months prior to the shooting he had threatened her with a knife, and restraint had been necessary to prevent him from setting fire to the furnishings in the home. When drunk he was abusive and "used foul language, stuff like that," and had threatened several times to kill plaintiff.

The night before the shooting plaintiff went to defendants' store and tried to induce the decedent to return home. He would not come with plaintiff but did arrive home about "three o'clock, he started arguing, pushed me around, and he was arguing about two hours like that." The next morning, after serving two of her children breakfast, plaintiff laid down in her daughter's room. She was awakened by decedent, who started "choking" her and said he would "finish" her. He chased her about the apartment and eventually into the kitchen, where he threatened "I got to kill you today . . . I am going to kill you now." He grabbed a chair, lifted it, and plaintiff "must have shot, I don't remember that."

█ Defendants' claim that the evidence of prior threats was inadmissible and tended to inflame the jury against them. We think the evidence was admissible because the overt act in the kitchen as well as decedent's conduct immediately preceding, could reasonably indicate to plaintiff decedent's purpose to carry the prior threats into effect. Cummins v. Crawford, 88 Ill. 312, 317; Forbes v. Snyder, Admx., 94 Ill. 374, 377.

Plaintiff's burden was to prove that she was injured in her means of support in consequence of the intoxication of decedent, to which defendant contributed in whole or in part. There is proof of the decedent's contribution to her support and of her loss of that contribution as a result of his intoxication, which brought on his death. There is evidence that defendants contributed to the intoxication. We think this was enough to bring the case to the jury, unless the evidence disclosed that plaintiff was not an "innocent suitor."

■ We cannot say as a matter of law that plaintiff was not an "innocent suitor" in the sense that term is used in James v. Wicker, 309 Ill. App. 397, and Forsberg v. Around Town Club, 316 Ill. App. 661. In the Forsberg case, the plaintiff "brought the injuries upon himself" by buying drinks for his assailants after he observed their drunkenness, and after they had assaulted him. In the James case, the plaintiff did not purchase liquor but was a "willing party," who participated in the drinking in a tavern. Neither case applies to preclude plaintiff's recovery here. She was an "innocent suitor" if she shot her husband in self-defense and did not help to bring about his habitual drunkenness or his drunken condition which brought about his death.

The killing of a human being in necessary self-defense is justifiable homicide (Ill. Rev. Stat., 1949, Chap. 38, par. 366), and self-defense requires that the danger be so urgent and pressing that in order to save life or great bodily harm, the killing be "absolutely necessary," and it must appear that the decedent was the assailant or that the slayer really and in good faith tried to decline further struggle before the killing (par. 367). The Supreme Court has held that "the true test is what the defendant believed was necessary, acting as a reasonable person, not whether the jury believed from the evidence that it was necessary or

apparently necessary." People v. Arcabascio, 395 Ill. 487, 498. The same test applies in the instant case with respect to plaintiff as it applied to Arcabascio in the criminal case. Germolus v. Sausser, 85 N. W. (Minn.) 946, 947.

██ On the evidence we have related hereinabove, we think the jury could properly find that plaintiff shot in self-defense, and we cannot say, therefore, that she was not an innocent suitor. Whether she should have left the apartment while he was chasing her, or should have called for help, were matters of defense. The same is true of the question whether she provoked the tragic event by threatening to go with decedent if he left the house for more whiskey. It is also a matter of defense whether her finding and loading the revolver and holding it hidden from decedent for twenty minutes before shooting him made her not an "innocent suitor." All reasonable men might not agree on the answers to these questions. Some might think that she may have feared to call for help or to leave the apartment unless to go with him if he went out for drink, and she may have hidden the revolver with a prudent hope that decedent would desist.

Plaintiff here was not like the plaintiff in Douglas v. Athens Market Corp., 320 Ill. App. 40, an active participant in causing decedent's intoxication. She had previously warned defendants not to sell her husband liquor and had stopped delivery of beer to the home. We cannot decide that she provoked the injury to her support or was a willing agent in procuring her husband's intoxication, as in Bowman v. O'Brien, 303 Ill. App. 630. Nor does Reget v. Bell, 77 Ill. 593, apply, since here there is evidence of decedent's habitual drunkenness and threatening quarrelsomeness, and there was not that evidence in the Reget case. Furthermore, plaintiff could reasonably fear harm if she disposed of decedent's liquor. And plaintiff's conduct

here cannot be compared to that of the assailant, Mc-Graw, in Shugart v. Egan, 83 Ill. 56.

■ ■ Plaintiff was not required to prove that she was free from contributory negligence, but she was required to make proof that the injury to her means of support, to-wit: her husband's death, was the proximate result of the defendants' contribution to decedent's intoxication. There is evidence that plaintiff and her children protested to defendants about their selling liquor to decedent. We think the most favorable inference from this is that defendants knew there was family concern about decedent's drinking, and they were bound to foresee that if they continued selling decedent liquor the family concern might be realized in family harm. The jury could therefore infer that decedent's death would not have occurred had he not been intoxicated, and accordingly the intervention of plaintiff's act, the shooting, did not break the chain of events which flowed from the sale of liquor. Jones v. Keilbach, 295 Ill. App. 598.

■ We conclude on this phase of the case that decedent's intoxication was the proximate cause of the injury (Haw v. 1933 Grill, Inc., 297 Ill. App. 37) to the means of the support of plaintiff, an innocent suitor, who killed decedent in what appeared to her as a necessary defense against death or great bodily harm.

■ Defendants claim prejudice by reason of the trial court's refusal to direct a verdict, or otherwise dispose of the "habitual intoxication" theory, and evidence under it, which plaintiff's complaint joined with the "in consequence" theory. We see no prejudicial error in this respect. The testimony of decedent's habitual drunkenness was relevant to show the progressive state of mind of decedent while intoxicated. The jury was not instructed on the habitual drunkenness theory, and we think this effectively disposed of the

392

theory. The proof under the "inconsequence theory" supports the verdict and accordingly we cannot attribute the verdict to prejudice.

■ We see no error either in the introduction of mortality tables for use as a basis of computing the extent of the injury to plaintiff's loss of support. The tables are competent in actions for personal injuries. Avance v. Thompson, 387 Ill. 77. We see no reason why, under the instant facts, they should not also be admissible in this case.

Defendants rely chiefly on Avance v. Thompson, for their claim that even if the mortality tables were admissible, prejudicial error was committed because of the absence of an instruction carefully explaining to the jury the use of the tables. In the Avance case the mortality tables were introduced and the jury was instructed that in assessing damages it should consider the amount of earnings plaintiff would lose in the future and determine the present cash value of these earnings, making allowance for the earning power of money. The court in criticizing the instruction said (p. 84) that care should be taken in instructing the jury about the use of the mortality table, and the jury should be told that life expectancy should not be multiplied by annual earnings because this would permit a plaintiff an award without consideration of other circumstances, which could reduce the loss; and that the "use alone" of mortality tables has such probability to confuse that a failure to explain their application would prejudice the defendants. But the court also said it would not reverse the case before it on that basis alone.

■ In the instant case it is clear that the jury did not use the mortality tables alone in fixing damages. The testimony showed decedent's annual income was about $1,100, and the table showed a life expectancy

of nearly eighteen years. Multiplying these two factors would far exceed the verdict which was rendered. The dictum in Avance v. Thompson is not applicable.

■ There is no merit to the contention that defendants were prejudiced in the giving of plaintiff's instruction No. 3, which was a partial quotation from the Dramshop Act, which referred to the right of action by husband, wife, child, parent, etc., and also referred to damages recovered by a minor. Defendants argue that the jury could have been misled to think that the action included a claim for the support of plaintiff's children. The only minor child testified that she did not have a claim of her own for loss of support. The evidence showed that the other child living with plaintiff was no longer a minor and contributed $25 per month to the family support. Furthermore, the jury was sufficiently instructed so as to plainly indicate that the cause of action was by plaintiff alone for her own loss. We see no error either in the giving of plaintiff's peremptory instruction No. 6. We think it contains substantially all the necessary elements.

■ Finally, we see no abuse of discretion in the trial court's limiting of the cross-examination by defendants' counsel. Two instances are offered for our consideration. In the first instance, it was not material to ask whether for five years decedent "apparently" was not drinking at defendants' store. In the second instance, the objection was properly sustained because the question whether impeaching testimony was "true" was for the jury.

For the reasons given the judgment is affirmed.

Affirmed.

LEWE and MURPHY, JJ., concur.