ARTHUR B. CHAPMAN, Plaintiff-Appellee, *v.* JOHN H. POWERS, d/b/a MOUND HOUSE TAVERN *et al.*, Defendants.—(JOHN H. POWERS, d/b/a MOUND HOUSE TAVERN, Defendant-Appellant.)

(No. 75-31; )

Fifth District—June 27, 1975.

Goldenhersh & Goldenhersh, of Belleville (Michael A. Katz, of counsel), for appellant.

Edward Neville, of East St. Louis, for appellee.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

This is a suit for personal injury brought against a tavern owner under section 14 of the Dram Shop Act (Ill. Rev. Stat. 1969, ch. 43, § 135) and against the alleged intoxicated person who inflicted injuries on the plaintiff in the defendant's tavern. Judgment for the plaintiff was entered against both defendants. This is an appeal by the tavern owner, John H. Powers.

On April 14, 1969, plaintiff Arthur Chapman, a painter by trade, entered defendant John H. Powers' tavern to meet a person concerning a painting bid on a house. He was not a regular customer of the tavern though he had known Powers for 18 or 20 years. Powers introduced plaintiff to Willie C. Franklin, an everyday customer of the tavern, who had been in the tavern approximately 45 minutes before the plaintiff arrived. Powers suggested that while plaintiff was waiting he bowl with Mr. Franklin. Franklin asked plaintiff what they would bowl for and plaintiff said for a drink. Plaintiff lost the first game and bought a drink for Franklin and his lady friend.

They played six more games—three for $1 each and three for $5 each. Between games plaintiff sat on a bar stool and Franklin sat with his lady friend, three or four stools away from the plaintiff. After the last game plaintiff prepared to leave. When Powers asked why he was quitting and why he didn't bowl some more, plaintiff said the machine was out of order, following which there was some argument between him and Powers regarding the condition of the machine. After he had put his coat on but while he was still at the bar, Franklin said he would play one more game—to which plaintiff agreed. Plaintiff put $5 under an ashtray on the bar. Franklin went to the men's room. When he came out he said he was not going to play. The plaintiff reached for his $5 but Powers grabbed it from the bar. At that time Franklin came up behind plaintiff and shot him twice in the back of the neck.

According to the testimony, plaintiff was in the tavern about 2 hours and had two beers. He was not intoxicated. Franklin had several highballs, though the exact number was not agreed upon. Plaintiff did not know Franklin prior to the incident, had very little to say to him, and did not sit and drink with him in the tavern.

The plaintiff sustained a massive paralysis of his right arm and a severed bronchial plexus with poor prognosis.

At the trial the police officer who investigated the shooting testified over objection by the defendant that he found a .38 revolver at Franklin's home and that Franklin admitted that it was his. He testified, over objection also, that Franklin admitted leaving the scene because he had been drinking. Defendant also objected to admission of the hospital bill in the amount of approximately $1,900.

The issues before us are whether a plaintiff who purchased a drink for his assailant prior to the occurrence is precluded from recovering against defendant under the Dram Shop Act; and whether the trial court ruled correctly in admitting into evidence the hospital bill and the testimony of the police officer regarding admissions made by Franklin.

Section 14 of article VI of the Dram Shop Act read in part as follows:

"Every person who is injured in person or property by any intoxicated person, has a right of action in his own name, severally or jointly, against any person who by selling or giving alcoholic liquor, causes the intoxication, in whole or in part, of such person. Any person owning, renting, leasing or permitting the occupation of any building or premises with knowledge that alcoholic liquors are to be sold therein, or who having leased the same for other purposes, shall knowingly permit therein the sale of any alcoholic liquors that have caused, in whole or in part, the intoxication of any person, shall be liable, severally or jointly, with the person selling or giving the liquors." Ill. Rev. Stat. 1969, ch. 43, par. 135.

■■ Appellant argues that if plaintiff purchased even one drink for the intoxicated person he is guilty of complicity and cannot recover for injuries sustained at the hands of an alleged intoxicated person under the provisions of the Illinois Dram Shop Act. We do not agree. Other factors are involved in determining whether or not a plaintiff is an innocent suitor under the Dram Shop Act. While it is true that in *Forsberg v. Around Town Club, Inc.*, 316 Ill.App. 661, 45 N.E.2d 513, the court said, "We believe the rule is uniform that where an injured person contributes in whole or in part to the intoxication of his assailant, he cannot recover," the plaintiff in *Forsberg* was himself intoxicated and there was evidence from which the jury could find that he had provoked his three assailants. Furthermore, in *Forsberg* the plaintiff and his assailant drank and ate together. The court said: "We believe that by his conduct, plaintiff brought the injuries upon himself and is not such an innocent suitor as the Dram Shop Act contemplates * * *." *Forsberg* cites *Hays v. Waite*, 36 Ill.App. 397, and *Bowman v. O'Brien*, 303 Ill.App. 630, 25 N.E.2d 544. In *Hays* the court observed that the plaintiff was an active agent in keeping his assailant intoxicated, and in *Bowman* the court found an act of provocation on the part of the plaintiff.

In *Holcomb v. Hornback*, 51 Ill.App.2d 84, 200 N.E.2d 745, cited by the defendant Powers, there were important factors other than intoxication. Plaintiff and her assailant knew each other, had emotional ties, and were "not getting along." Prior to the shooting he spent the night with her. The next day, while at the tavern, she would not go out with him, so he shot her and then killed himself. This was a tragedy not wholly encompassed by a Dram Shop Act provision. While at the tavern she purchased no drinks for her assailant but "participated" in the drinking. This was a minor part of a human scenario which did not depend on the tavern for its unfolding. The court intimates as much when it says: "Plaintiff had every reason to know or suspect her assailant's condition, having spent the night with him and having observed his conduct during the morning of her injury and immediately before it." By contrast, in the instant case, the plaintiff did not sit or visit with his assailant, did not know him, had no conversation of any consequence with him, bowled with him at the invitation of the defendant Powers, and did nothing which would provoke a shooting.

Likewise in *Sapp v. Johnston*, 15 Ill.App.3d 119, 303 N.E.2d 429, the plaintiff and his friend Minch spent the night visiting and drinking in bars. Plaintiff went to sleep in the car and "Michael Minch drove off the road, and the plaintiff woke up in the hospital." Denying recovery against the tavern, the court said: "* * * the plaintiff voluntarily participated to a material and substantial extent in the drinking which led to the intoxication of Michael Minch; willingly encouraged the drinking * * * by accompany him on the tour of taverns * * *."

In *Douglas v. Athens Market Corp.*, 320 Ill.App. 40, 49 N.E.2d 834, plaintiff knew his assailant, they were part of a group which bought rounds of drinks commencing in the early evening. At 7 P.M., at which time the plaintiff said "We was all getting drunk," he left the tavern and went to his truck establishment next door to get some trucks serviced. He came back at 10 P.M. and the drinking continued. The assailant and some truck drivers had an altercation and the plaintiff was attacked and injured. Furthermore, plaintiff was alleged to have provoked his assailant, though there was conflict in the testimony on this point. The court said: "It is the law in this State that a plaintiff who participates in bringing about the intoxication of another, whose intoxication causes him to injure the plaintiff, may not recover."

In *Osinger v. Christian*, 43 Ill.App..2d 480, 193 N.E.2d 872, the court reiterated the rule that contributory negligence is not a defense in a dram shop case but that complicity is a defense. In this case the plaintiff was injured while riding in a car driven by an intoxicated driver with whom he had been drinking. The defense maintained that since there

was complicity there could be no recovery as a matter of law. The court said: "It is true, as defendant argues, that one who joins an intoxicated person in a drinking spree may be guilty of complicity." But the court went on to say that it was a question for the jury and that it was wrong to find the defendant not guilty as a matter of law.

In *Lester v. Bugni,* 316 Ill.App. 19, 44 N.E.2d 68, the plaintiff was a minor aged 17. His farm employer took him to town on a drinking "spree." The plaintiff asked to go home but his employer would not take him. So plaintiff went to the car and was asleep in the back seat when his employer had an accident. The defense maintained that since the plaintiff had participated in the spree and had purchased a part of some wine which was consumed, he was precluded from recovery. The court allowed recovery, saying: "* * * the Dram Shop Act * * * is remedial in character and should be so construed as to suppress the mischief involved and advance the remedy therein provided." A similar situation arose in *Busser v. Noble,* 22 Ill.App.2d 433, 161 N.E.2d 150, where the plaintiff was injured in a collision and the court held that whether or not the plaintiff's participation precluded him from recovery was a jury question.

■■ In the instant case we would point out that plaintiff was urged by the defendant tavern owner to remain and bowl with his assailant, that plaintiff purchased only one drink for his assailant who had several during the course of their bowling, that at plaintiff's suggestion they switched the stakes from a drink to money, that plaintiff himself drank very little, and that plaintiff did not provoke the attack. We think it would defeat the purpose of the Dram Shop Act to hold that under such circumstances a tavern owner is not liable for an injury to one of his patrons.

■■ We do not find that the trial court committed reversible error in failing to sustain objections to testimony offered by the police officer regarding admissions of Willie Franklin. Franklin was a defendant and his declarations were against his own interests. As early as 1885 the Illinois Appellate Court said in *Rogers v. Suttle & Scroggin,* 19 Ill.App. 163, "The admission of a party to the record has always been received in evidence against him and the mere fact that there is another sued jointly with him and that the admission may in terms affect both parties is no reason for rejecting the evidence as against him." This holding is reflected in 18 I.L.P. *Evidence* § 152 (1956), which states in part: "An admission of one of two or more coparties is competent against the declarant and it is not to be excluded merely because in terms it also affects a coparty * * *."

■■ We agree with appellant that the hospital bill was improperly ad-

mitted in evidence since there was no medical testimony to establish that the charge was reasonable or that the entire bill was related to the injury claimed. However, we do not find this to be prejudicial error. In *Wicks v. Cuneo-Henneberry Co.*, 319 Ill. 344, 150 N.E. 276, a skiagraph was introduced without proper foundation. The witness physician did not develop the plate or see it developed and could not testify that it was an accurate portrayal of the bones of the plaintiff's hand. But the court said: "The error in admitting it, however, was not prejudicial * * *. * * * there was no contention on the trial that the condition prescribed by him [the witness] does not exist * * *." And in *Haehn v. East Side Levee & Sanitary District*, 203 Ill.App. 48, the court said it was not reversible error when instructions on behalf of the plaintiff did not limit damages to those charged in the declaration and were not accurate, where the measure of damages that should apply appeared in the instructions given on behalf of the defendant. In the instant case there is ample evidence of injury to the plaintiff and of extended treatment and physician's and hospital bills which serve to support the jury's verdict of $15,000. Based upon his previous years earnings, plaintiff's loss of wages exceeded $25,000 at the time of trial. His injury was serious and permanent and there was some question whether he would ever be able to work again.

For the foregoing reasons, the judgment will be affirmed.

Affirmed.

EBERSPACHER and G. MORAN, JJ., concur.