Robert K. Wade, Appellant, v. The Ravenswood Hospital Association, an Illinois Corporation Not for Profit, and Philip R. McGuire, Appellees.

Gen. No. 46,085.

103

Opinion filed June 22, 1954. Released for publication July 9, 1954.

WILLIAM S. DUNNING, of Chicago, for appellant.

ALBERT M. HOWARD, of Chicago, for certain appellee; WILLIAM C. WINES, of Chicago, of counsel.

CROWE & ABRAHAMSON, of Chicago, for certain other appellee; BURT A. CROWE, of Chicago, of counsel.

MR. JUSTICE TUOHY delivered the opinion of the court.

Plaintiff sued defendants, The Ravenswood Hospital Association and Philip R. McGuire, for damages allegedly occasioned by negligent treatment or failure to afford proper care and treatment while plaintiff was a patient at the defendant hospital. At the close of the plaintiff's case the court directed a verdict for both defendants, and from a judgment on the verdict so returned this appeal is taken.

Plaintiff maintains (1) that there was sufficient evidence to establish a prima facie case and that the

issue should have been submitted to the jury; (2) that a new trial is mandatory because of the exclusion of competent evidence consisting of a hospital record and certain hypothetical questions.

In order to consider these assignments of error it will be necessary to review the evidence in some detail.

On January 12, 1951, plaintiff was 30 years of age and lived with his wife in Chicago, Illinois. He was employed by a Chicago candy concern, making $90 to $100 a week, and on the day of the accident resigned to take another job and about noon on that day drove to a tavern on Wilson avenue in the City of Chicago, where he expected to meet his brother. He remained in the tavern until late that night watching television and having drinks. He stated that he had no idea how many drinks he had or what time it was when he left the tavern, but that he went to his car and started west on Wilson avenue; that he remembers stopping for some stop and go signals along Wilson avenue; and that his next clear memory was sometime the second or third week in March in Hines Hospital. It further appears that shortly after 11:00 p. m. that night the police were called to investigate an accident in the 2800 block on Wilson avenue, that on arrival they found plaintiff's car, which had gone off of the road, up onto a parkway and struck a lamp post and tree, demolishing the front end of the car. Plaintiff was lying on the ground unconscious by the side of the automobile. He was placed on a stretcher and sent to the Ravenswood Hospital in a fire department ambulance. Some 45 minutes later the police proceeded to the hospital and found plaintiff in a bed, moaning, tossing and unconscious.

A nurse at the hospital testified that plaintiff was brought into the emergency room about 11:30 p. m.; that he was taken from the emergency room to a private room and side rails applied to the side of the

bed to prevent him from falling out; that nurses applied ice bags to his head and stayed with him most of the night to see that he kept quiet; that he was unconscious and stayed that way the biggest part of the night; that his temperature and blood pressure were taken and routine treatments administered. This nurse testified that she was with the patient almost constantly from the time he came in until she went off duty at 7:00 in the morning; that he was given chloral hydrate rectally in order to·quiet him. She stated that she did not call an interne or resident doctor during the course of the night.

It appears, however, that the patient was seen during the course of the night by interne Erhardt, and administered certain medicines. It appears that the Ravenswood Hospital had a practice whereby various doctors took turns in administering emergency cases, and were subject to call in case of emergency. Dr. McGuire was called by a nurse about 7:00 in the morning and went immediately to the hospital. His first diagnosis was cerebral concussion and alcoholic intoxication. The patient had sand bags about his head and neck so as to immobilize the head. The final diagnosis by Dr. McGuire was a cervical fracture and a cord injury. Orders were given to keep the patient's head immobilized, a roll was placed under his shoulders to prevent extension of the cervical vertebrae and to prevent certain cord injury. Sedatives were administered. X-rays were not taken, McGuire testifying that after consultation with orthopedic surgeons it was apparent that there was a cord involvement and that it would not be prudent to disturb the patient by placing his head in different positions to take pictures. Learning that the patient was a veteran, McGuire suggested that he go to Hines Hospital where he could be cared for by experts and where more facilities for the type of injury suffered would be

available. After the morning examination McGuire called Hines Hospital and made arrangements to have the patient transferred. He was removed to Hines in an ambulance, the patient's head and neck being immobilized by sand bags, and arrived at Hines about 11:00 that night.

On arrival at Hines Hospital he was put to bed with side rails on his bed, ice packs on his head, and given sedation. A spinal puncture was made to determine if there was a block in the spinal cord. This puncture was later repeated and there was found to be a block causing pressure against the spinal cord. After examination by Dr. Ramirez, it was determined that Wade had a cervical cord injury, and his head was placed in halter traction. On March 15th an operation to relieve this pressure, called a laminectomy, was performed, and in that operation it was found that the spinal process from the sixth cervical vertebra was loose and unattached. Fragments of loose bone were removed. The wound eventually healed and no further surgical treatment was given.

The patient at the time of the trial still suffered from a generalized paralysis, he has a constant aching and burning in his legs, but no touching sensation in them. He can move his arms and left wrist, but not his right. He has feeling in the top part of his arms but not in the bottom parts. He has no control of his urination and wears an inner catheter. He has no control of his bowels and must be aided by mechanical agitation. He cannot get in and out of his wheel chair unaided, but can move it by pressure on the wheels with his wrists. There has been some clearing up of his mental condition since the accident, but no appreciable change in his physical disability. The operation of March 15th resulted in no significant improvement.

Plaintiff's complaint consists of three counts. The first count consists of charges of malpractice against defendant McGuire. The second count charges negligence on the part of the defendant hospital. The third count is a combination of the other two.

■■ Inasmuch as a verdict was directed here as to both defendants, we are bound by the rule that in considering a motion to direct a verdict the court must consider the evidence in the aspect most favorable to plaintiff, together with all inferences reasonably to be deduced therefrom; and if there is any evidence to support the complaint of plaintiff, the motion should be denied. *Marshall v. Metropolitan Life Ins. Co.*, 405 Ill. 90; *Bartolucci v. Falleti*, 382 Ill. 168. With this principle in mind we consider the alleged negligence, first on the part of defendant McGuire.

The substance of the complaint against McGuire seems to boil itself down to the following specifics: (1) that he made an improper provisional diagnosis; (2) that he failed to take X-rays or spinal punctures; (3) that there was a failure to provide prompt immobilization and traction.

■■■ The allegedly improper provisional diagnosis consists of a notation upon the chart as "cerebral concussion," when as a matter of fact the provisional diagnosis should have shown a fractured vertebra with cord involvement. However, the doctor in his testimony says that his provisional diagnosis was cervical fracture with cord injury, and his testimony is not disputed. There would not necessarily be contradiction between the two diagnoses. Furthermore it does not appear that any damage resulted to the patient even though there might have been a faulty provisional diagnosis. Certainly within a few hours a definite final diagnosis was made on the chart, in the doctor's handwriting, of a spinal fracture. The failure

to take X-ray pictures is explained in the testimony of the doctor that, a determination having been made within a short time after he saw the patient to remove him to Hines hospital, the doctor was of the opinion that movement such as would be necessitated in taking pictures would not be good medical practice in view of the suspected injury. No one disputes the reasonableness of this conclusion. While it is true that Dr. Ramirez says that a spinal puncture should have been made at an early moment in order to ascertain whether or not there was pressure on the spinal cord, there is no evidence in the record that had an earlier spinal puncture been taken, any other or different treatment than that administered would have been indicated. So far as immobilization and traction are concerned, defendant McGuire testified that when he first saw the patient there were sand bags about his neck, which is ordinary procedure to bring about temporary immobilization; and later in the day when the patient was transferred to Hines he continued to be so immobilized. We do not feel that the evidence shows any negligence in this respect.

The charge of negligence which is emphasized is the fact that the plaintiff was not put in a "halter" or subject to skeletal traction by the use of Crutchfield tongs as was later done at Hines Hospital. However, Dr. Ramirez, upon whom the plaintiff relies to establish the negligence, testifying in this respect, says:

"Doctors differ in their methods and techniques. . . . I am not categorically prepared to say that one is right and one wrong. I would not criticize Dr. McGuire in that he didn't put a halter or mechanical traction on this man's head in the afternoon and take it off after four or five hours and put him in the ambulance, Dr. McGuire knowing that the man was to be transferred to Hines Hospital if he had the sand-

bags beside the head. The use of an extension roll is common in Chicago if there is a displacement. I don't criticize the man using it."

█ It is a well-settled rule in Illinois that before a plaintiff can recover in a malpractice case it must be shown by affirmative evidence, first, that defendant was unskillful and negligent, and, second, that his want of skill and care caused the injury to the plaintiff. If either element is lacking in the proof, no case is presented for the consideration of the jury. *Moline v. Christie*, 180 Ill. App. 334; *Wallace v. Yudelson*, 244 Ill. App. 320; *Ewing v. Goode*, 78 Fed. 442. In the instant case there is a total lack of proof that the defendant was unskillful and negligent, and it certainly does not appear that even though all the matters criticized by the plaintiff had been performed that any other or different result would have been obtained.

The principal complaint against the defendant hospital is that plaintiff was permitted to remain from 11:00 on the night when he was brought in as an emergency case until 7:00 the following morning without the attention of a competent medical man. While it is true that no persons other than an interne and nurses saw this man during that period, and while in that respect the hospital did not comply with the high standards which should guide an institution devoted to the care and saving of human life, it does not appear anywhere that the failure to provide a competent medical man resulted in the ultimate condition of ill-being of this patient. It appears that when the patient was transferred to Hines Hospital on the following day nothing was done for him from the time he arrived there that night, except a spinal puncture, that had not been done for him at Ravenswood; and the care and treatment which this man was given at Hines

is accepted by plaintiff as the standard by which proper medical hospital treatment is to be judged. The treatment given to him at Hines was a spinal puncture, which was for the purpose of determining pressure, but it does not appear that the treatment given him at Ravenswood ignored the possibility of pressure, but on the contrary it appears that that was the suspected diagnosis, and treatment by way of immobilization and extension was administered. It is true that he was not placed in traction, as was later done at Hines Hospital, and when the evidence is closely analyzed it would appear that this was about the only treatment prior to the time of the operation at Hines that was not done at Ravenswood. However, as we have heretofore quoted from the evidence Dr. Ramirez, the expert relied upon by plaintiff to establish the medical claims, exonerates Dr. McGuire, and necessarily the defendant hospital, for not having commenced this treatment in view of the fact that the patient was so soon to be moved.

█ We find a complete absence in this record of any causal connection between the alleged negligent acts of omission on the part of the defendants and the ultimate condition of ill-being of this patient. The record shows that after many hours of continuous drinking of intoxicants that this man, attempting to drive his automobile, was involved in a collision of such force as to completely break off from the spinal column certain portions of the vertebrae, which in the March operation were found lying loose in the back, and he was picked up by police officers while lying in a paralyzed condition and taken to the hospital. Dr. Ramirez, upon whom plaintiff relies, testified that the injuries were suffered at the time of this accident, and there is no proof that the treatment or lack of treat-

111

ment received at Ravenswood Hospital aggravated these injuries.

The judgment of the circuit court of Cook county is therefore affirmed.

*Judgment affirmed.*

SCHWARTZ, P. J. and ROBSON, J., concur.