Ted M. Parnham, Plaintiff-Appellee, v. Carl W. Linder
 Co., an Illinois Corporation, and Stoner Mfg. Corp.,
 an Illinois Corporation, Defendants-Appellants.

Gen. No. 11,563.

Second District, First Division.
June 16, 1962.
Rehearing denied July 31, 1962.

Baker, McKenzie & Hightower, of Chicago, and Gates W. Clancy, of Geneva, for appellants.

Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for appellee.

DOVE, P. J.
This is an appeal by the defendants, Carl W. Linder Company and Stoner Manufacturing Company, Illinois Corporations, to reverse a judgment rendered against them in favor of the plaintiff, Ted M. Parnham for injuries he sustained when struck by an iron cable which was being used in an attempt to hoist an air conditioner unit from the ground level to the roof of the plant of the Stoner Corporation in Aurora.

The record discloses that an oral agreement had been entered into by Stoner Corporation and the Linder Company by the provisions of which, the Linder Company undertook, on April 27, 1957 to move for the Stoner Company, an air conditioning unit, approximately 8 feet high, 7 feet wide and 6 feet long and weighing 3300 pounds from the ground level to the second story roof of the Stoner plant. To accomplish this the Linder Company used a mobile crane which it owned and which was operated by Ralph Jericho, a hoisting engineer. On this occasion, Glenn Tooley, an iron worker in the employ of the Linder Company, assisted Jericho. Also assisting in the work was John

Smith maintenance foreman for the Stoner Company and another of its employees, Don Harner.

The method used by defendants was suggested by employees of the Stoner Company and approved by employees of the Linder Company. Two steel rods, furnished by the Stoner Company, were inserted by an employee of the Linder Company, through the frame which formed the base of the air conditioner. Over the protruding ends of these steel rods, at the four corners of the base of the unit, hooks were placed, and attached to these hooks were cables which were brought together in pyramid fashion over the top of the center of the air conditioning unit and were there hooked on to the cables running from the extremity of the boom.

The plaintiff testified that at the time of the accident he was 43 years of age, was employed by the Stoner Company as a tool and dye grinder and had been in the employ of the Stoner Company since 1941; that after completing his work on the afternoon of April 27, 1957, he punched the time clock at 3:32 p. m., and proceeded to walk from the plant through the compound on the plant premises toward his car, which was parked across the street. He saw the air conditioning unit and stopped to observe the operation of the hoisting crane and stepped to the north side of the unit; that in response to directions given to him by Smith, Stoner's maintenance foreman, he placed a board as a support up against the north side of the unit in order to keep the two cables from rubbing against the unit; that when the cables which were fastened to the hook, tightened, one of the hooks slipped off the rod and he was struck in the left eye and in the nose by the hook; that immediately after being hit he didn't know exactly what was happening but he ran over to the sidewalk holding his eye and was

immediately taken to the hospital. He remained in the hospital 10 days and was then taken home where he spent eleven weeks before returning to work.

Glenn Tooley testified that he was an employee of the Linder Company and assisted Ralph Jericho in this operation and inserted the steel rods through the base of the frame of the air conditioner and hooked the cable over the four protruding ends of the rods at the four corners of the unit; that after doing so he stood on the top of the unit to signal the lift; that after he gave the signal to the crane operator he shouted, "stand back"; that when the unit had been raised two or three inches off the ground the hook on the cable, at the northeast corner of the unit, slipped off the end of the steel rod causing the cable to swing up and strike plaintiff in the nose near his right eye. This witness further testified that prior to the accident he did not see the plaintiff at any time, or anyone on the north side of the air conditioner.

Ralph Jericho testified that he was the crane operator, observed plaintiff standing off to his left but did not recall seeing him go over to the unit at any time but heard Tooley's warning to "stand back" just before the lift started.

John Smith, maintenance foreman of the Stoner Company testified that he was on the roof of the building about 25 feet from the edge of the roof, at a point where the unit was to be placed. He observed plaintiff standing in the yard but did not see him do anything in connection with the operation and gave no directions to the plaintiff to do anything in connection with the work that afternoon.

Donald Harner, an employee of the Stoner Company, testified that he was on the south side of the unit and at the direction of John Smith, he was using a board so that the air conditioner unit would not be dented

228

at the top; that prior to the accident, he noticed the plaintiff standing as an onlooker some twenty feet away from the unit but did not recall that he assisted in any way and did not know where he was when the accident occurred.

Norbert Eugene O'Connor testified that he was an employee of the Stoner Company and was looking out of a window in the plant office on the afternoon in question and saw the operation in progress and observed plaintiff place his hand on a board which was against the top of the unit and, with his foot, pushed a hook onto the cable; that when pressure was applied, the bars bent and the hook nearest to the plaintiff came off.

Glen Louis Phillips testified that he observed the plaintiff push the cable on the northeast corner with his foot toward the unit; that plaintiff then stepped back about fifteen feet and was in that position when the cable on the northeast corner "shot off the end of the rod and hit him in the face."

As a result of the injury which plaintiff received he has completely and permanently lost the vision of his left eye. Dr. O. L. Siewert, an eye specialist, examined and treated him immediately after the occurrence and his testimony is that the advantages of two eyes are two fold; that with two eyes a person can judge distances more readily, altho an individual with only one eye can develop a certain amount of depth perceptions from experience; that the second advantage of having two eyes is right and left peripheral vision, which permits one to appreciate objects to the side; that, as presently maintained, plaintiff would require no further treatment for his left eye, altho occasionally such an eye does flare up to cause other degenerative conditions. The Doctor further testified that he did not know whether plaintiff will require any further

treatment for his left eye; that the irritation in his right eye does not have any relationship to his injury and that the right eye is fine with practically 20/20 vision.

The plaintiff testified that because of his lack of vision on his left side he bumps into things and that since the accident he does not play as good a game of golf as formerly and has decreased his family activities; that he has been working steadily at his regular job and that his earnings have remained the same or increased since he resumed work after the injury, until the time of the trial. The amount of his hospital and physicians bills aggregate $445.05.

The foregoing is a fair resume of the evidence found in this record. The original complaint made Stoner Manufacturing Company, John W. Smith, its maintenance foreman, Carl W. Linder Company, Ralph Jericho and Glenn Tooley, its employees, defendants. The action was thereafter dismissed as to the individual defendants. An amended complaint was filed, the first count charged that the plaintiff was an invitee upon the property of the Stoner Company and that that company and the Carl W. Linder Company were guilty of negligence while engaged in the joint enterprise of hoisting the air conditioner from the ground to the roof of the Stoner plant. The second count charged the defendants with a wilful violation of the provisions of the Scaffolding Act. The issues made by the pleadings were submitted to a jury resulting in a verdict and judgment in favor of the plaintiff and against defendants for $60,000. Each defendant has taken an appeal and separate briefs and arguments have been filed.

Counsel for appellant, Carl W. Linder Company, insist that the evidence discloses that as to this defendant, the plaintiff was a volunteer and that this

230

defendant was under no duty to exercise ordinary care as to the plaintiff, and that the trial court erred in not directing a verdict in its favor as there is no evidence that it was guilty of any negligence, or that it violated any of the provisions of the Scaffolding Act. It is also insisted that in the course of the trial, the court erred in the admission of evidence and improperly refused two instructions tendered by this defendant.

Counsel for the Stoner Company argue that the evidence discloses that the plaintiff was guilty of contributory negligence as a matter of law; that the trial court erred in giving one of plaintiff's instructions and in refusing to give three other instructions tendered by this defendant. It is finally argued that the damages awarded were excessive.

The evidence is that Mr. Jericho, the hoisting engineer was in complete charge of this operation. He was assisted by Mr. Tooley, both employees of the Linder Company. Mr. Smith was foreman for the Stoner Company and Mr. Harner was another employee of that company. In making the lift, Mr. Jericho wished to use eyebolts and chains. Mr. Smith suggested the use of steel bars at the base of the unit. Mr. Jericho accepted this suggestion and the bars were furnished by the Stoner Company, put in place by Mr. Tooley who also attached the hooks to the protruding ends of the bars.

Mr. Smith was on the roof of the Stoner plant to direct the placement of the air conditioner. Messrs. Jericho, Tooley and Harner were on the ground. Mr. Jericho testified that from start to finish the employees of both defendants engaged in a concerted effort to get the job of lifting the air conditioner unit accomplished in a proper and effective manner. The hoisting and placing of this unit was an operation undertaken

231

by both defendants. The evidence sustains the finding of the jury that defendants were engaged in a joint enterprise.

■■ There is evidence that plaintiff was told by Mr. Smith to place a board on one side of the unit in order to prevent damaging it. Mr. Harner was doing the same thing on the other side of the unit. When pressure was applied, as the cable was raised, the bars bent and the hook at the northeast corner of the unit came off. The bars were smooth and when bent there was nothing to prevent the hook coming off. If plaintiff's testimony is correct he was directed by the foreman of the Stoner Company to do what he had been doing just before he was injured. The due care of the plaintiff and the negligence of the defendants were jury questions and under the evidence found in this record, the jury were warranted in finding that plaintiff was not a volunteer, that the defendants were negligent and that the plaintiff was in the exercise of due care for his own safety at the time he was injured. The Stoner Company does not insist that it was not negligent as a matter of law neither does it insist that plaintiff was a volunteer but this defendant recognizes that plaintiff was rightfully on the premises and its duty toward him was that of an invitee.

■ It is insisted by counsel for the Linder Company that the trial court erred in permitting evidence to go to the jury as to manner and means employed in accomplishing the successful hoisting of the unit after plaintiff had received his injury. What the record shows is that Mr. Jericho was called as an adverse witness, by the plaintiff. Following the cross-examination of Mr. Jericho, by counsel for plaintiff, he was cross-examined by counsel for the Stoner Company. In the course of this cross-examination by counsel for the Stoner Company, Mr. Jericho testified that following plaintiff's departure to the hospital, the lifting of

232

the unit was resumed. This witness was then asked by counsel for the Stoner Company: "On this second time how did you lift it?" Counsel for the Linder Company interposed a general objection which was overruled and the witness answered that it took fifteen to twenty minutes to rearrange the unit for the second lift; that eyebolts were put in and a chain run from one eyebolt underneath to the other side and that the second lift was then accomplished without incident. There was no motion to strike this answer but the objection should have been sustained. (Grubb v. Illinois Terminal Co., 366 Ill 330, 341, 8 NE2d 934; Hodges v. Percival, 132 Ill 53, 23 NE 423; Day v. Barber-Colman Co., 10 Ill App2d 494, 508, 135 NE2d 231.)

This record, however, discloses that during the cross-examination of John T. Smith, maintenance foreman for the Stoner Company, under Section 60 of the Practice Act, by counsel for the plaintiff, Mr. Smith testified, without objection as abstracted: "After the injury the second lift took place. They hooked up with eyebolts and brought it up. This time they did it their way. The unit was raised with the eyebolts and chains, this time without incident, it came right up."

The record also discloses that after the conclusion of plaintiff's case, counsel for the Linder Company called Mr. Jericho for cross-examination under Section 60 of the Practice Act. Following this cross-examination counsel for plaintiff further cross-examined this witness and without objection, Mr. Jericho, as shown by the abstract, testified: "As to the second attempt to lift the unit I did not use bars, but used eyebolts. The eyebolts were placed in holes which were in each corner of the unit. We took a chain and hooked one eyebolt around the unit and caught the other one to keep the frame from spreading. This chain also had a load binder on it to make it tight so that the weight would not cause the frame to tilt and ruin it because the

233

frame was not heavy enough to carry it otherwise. We then ran the very same sling down with these four legs and hooked them to each eyebolt. We then hooked the binder. We then picked the load up and put it in place. I change the method from the first venture because our first attempt was unsuccessful. This was the first attempt I ever made to lift an air conditioner by bars, but I have used this method on similar units. However, I have never used it on air conditioning units. As soon as the hook came off the rod, I saw Mr. Parnham running away from the unit holding his eye. He was running over to my left away from the unit, running towards the west. When I saw him he was possibly twenty feet away from the unit and running."

██ The law is that when the record discloses that testimony is received without objection, any error that may have occurred when similar testimony was offered, is waived. (Shannon v. Potts, 117 Ill App 80; City of Beardstown v. Smith, 52 Ill App 46.)

█ It is also insisted by counsel for the Linder Company that it was error to admit in evidence the life expectancy tables. It has been held that an injured person's age and expectancy of life may be considered in connection with other testimony showing his suffering, and his earning capacity. (Avance v. Thompson, 387 Ill 77, 55 NE2d 57; Stegall v. Carlson, 6 Ill App2d 388, 128 NE2d 352; Kiriluk v. Cohn, 16 Ill App2d 385, 148 NE2d 607.)

█ The two instructions which counsel for the Linder Company tendered and which the court refused, told the jury that if they found from the evidence that, at the time of the occurrence in question, plaintiff was a volunteer or acting as a volunteer, that then the plaintiff could not recover. The evidence in this record does not warrant the giving of this instruction. The evidence is that plaintiff was an employee of one

of the defendants. He had just finished his work for the day and had left the building where he was employed in the usual and customary way. His business connection with one of the defendants included leaving the premises of his employer. (Cunningham v. Metzger, 258 Ill App 150.) Plaintiff was on the premises of his employer, one of the defendants, at the time he was injured. He was an invitee, not a volunteer. It was not reversible error to refuse these instructions.

▇ The instruction given at the request of the plaintiff, to which the Stoner Company objects relates to damages and is standard IPI Instruction 30.01 including elements of damage as indicated in 30.02, 30.04, 30.05, 30.06 and 30.07. What counsel objects to is the inclusion in this instruction of "the value of earnings lost and the present cash value of the earnings reasonably certain to be lost in the future." Counsel state that the evidence shows that plaintiff sustained no loss of wages and proved no future loss of wages. The evidence is that plaintiff's wages were $2.60 per hour and that following his injury, he was in the hospital ten days and remained at home, absent from work, for the following eleven weeks. Furthermore, this instruction concluded: "Whether any of these elements of damages has been proven by the evidence is for you to determine. Your verdict must be based on evidence and not upon speculation, guess or conjecture." The jury could not have been misled by this instruction.

▇ It is also insisted by the Stoner Company that the damages awarded plaintiff are excessive. Counsel argue that since the medical expense incurred by plaintiff was only $445.05, the jury must have been activated by passion or prejudice when it determined that the value of the complete and permanent loss of the vision in one eye, was $60,000. Counsel argue that the jury awarded $59,554.95 to the plaintiff, in addition

to the amount of his special enumerated damages and insist that this substantial amount must have been awarded for pain and suffering. In this connection counsel quote from Goertz v. Chicago & N. W. Ry. Co., 19 Ill App2d 261, 277, 153 NE2d 486, where it is said: "A study of Illinois cases, cases from other jurisdictions, and Federal cases cited in the brief on the question of excessiveness shows an average allowance for pain and suffering of less than 50% of the total verdict. The relevant Illinois cases show an average allowance of about 40% of the total verdict." Counsel conclude that, in the instant case, more than 99% of the total award is for intangibles. This argument is not persuasive or convincing, and finds little, if any, support in the cases. In Lau v. West Towns Bus Co., 16 Ill2d 442, 158 NE2d 63, the court sustained a judgment for $75,000 where the special damages amounted to $1500.

 It is also insisted that the trial court erred in permitting plaintiff to show that his right eye, his uninjured eye, was not in perfect condition. We believe this was proper. The health of an injured person, before and after an injury is always material on the issues of damages. Such evidence shows, or tends to show, the probable effect of the injury received, upon the plaintiff. (15 ILP Damages, sec 234.)

 The judgment is large. Under our system of jurisprudence, however, it is the jury, not a reviewing court which determines the amount which will compensate a plaintiff for the injuries he has sustained. We are unable to find any error in this record which requires the reversal of this judgment and it will therefore, be affirmed.

Judgment affirmed.

McNEAL and SMITH, JJ., concur.