Richard E. Livengood, Plaintiff-Appellee, v. H. Sargent Howard, Defendant-Appellant.

(No. 72-149; ▮▮▮▮▮▮▮▮▮▮▮

Third District—April 27, 1973.

John Cassidy, Sr., of Peoria, for appellant.

Robert C. Strodel, of Peoria, for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This is an appeal by Defendant, Henry Howard, from a verdict and judgment for $50,000 in favor of Plaintiff, Richard Livengood, entered by the Circuit Court of Peoria County in a medical malpractice action.

The plaintiff, 19 years old at the time the suit was filed, first became aware of an ailment in his left ear in January of 1968, when pain developed and there was a purulent discharge from that ear. At the time he was serving in the U.S. Navy and while on leave in March, 1968, he consulted his family physician, Dr. Dan Bower, who told him that he had a perforated ear that was draining. Soon after he was ordered to Great Lakes, Illinois and treated in the Naval hospital from March until September of 1968. The discharge from his ear continued and he also had dizzy spells and on occasions "blacked out". In September, 1968, he was discharged and returned to his home in Peoria.

In the meantime, during July of 1968, he had again consulted Dr. Bower regarding his ear and was advised by Dr. Bower that he should consult Dr. Howard, the defendant in this case, but he did not do so until four months later on November 1, 1968. The physical examination by the defendant revealed an odorous drainage from his left ear and practically no hearing in that ear. The defendant suspected a serious infection in the mastoid bone and because of swelling and distortion he could not see into the inner ear. An x-ray revealed extensive infection and disease in the left mastoid area and the possibility of cholesteatoma, a tumor of skin which develops in the middle ear after there is a hole in the ear drum. When plaintiff visited the defendant again on November 5, he was advised that it was necessary to perform an operation on the mastoid and clear out all the diseased tissue and relieve the pressure. The hearing in that ear had already been destroyed and the plaintiff was advised that failure to operate could result in meningitis, brain absess or death.

The surgery, known as a left radical mastoidectomy, was performed on November 18, 1968. The defendant found granulations, pus and debris

which obscured the cranial nerve but which he considered necessary to remove. Because the debris and pus were so thick it could not be removed by air suction. Therefore, defendant proceeded to remove the debris by scraping. During the course of the surgery the nerve became frayed or partially severed. Realizing the frayed nerve should be repaired, he called in Dr. Alcocer, another ear specialist, to help him. Dr. Alcocer, in repairing the injured nerve, used a surgical microscope which afforded magnification up to ten times that of the binocular loop used by defendant. Following the surgery the left side of plaintiff's face drooped and was paralyzed.

Plaintiff brought this suit to recover damages for negligent performance of the surgery. The case went to trial on two counts, one which alleged defendant was negligent, and another which alleged failure to obtain legal consent. The pleadings alleged severance of the seventh cranial nerve, failure to avoid injury to plaintiff's hearing function and failure to repair the hearing function. At the close of plaintiff's evidence the trial judge directed a verdict in favor of the defendant on Count two. Also on defendant's motion the court ruled there was a total lack of evidence that any impairment to plaintiff's hearing was caused by the defendant. The plaintiff was permitted to amend his pleading basing his damages solely on facial paralysis resulting from injury to the nerve.

On appeal it is the contention of the defendant there was an absence of competent evidence to support one or more of the essential elements of the plaintiff's case, and therefore, the trial judge erred in denying his motion for judgment notwithstanding the verdict.

■■ The general rule in a malpractice case is that the plaintiff has the burden to prove the proper standard of care imposed upon the defendant and then to prove by affirmative evidence an unskilled or negligent failure to comply with the standard and a resulting injury. *Estell v. Baringer*, 3 Ill.App.3d 455, 278 N.E.2d 424. See also, *Comte v. O'Neil*, 125 Ill.App.2d 450, 261 N.E.2d 21.

The evidence produced by the testimony of the plaintiff's witnesses established a standard of care used by a specialist who practices in the field of medical science with which we are concerned. Dr. David Austin of Chicago, a specialist in ear, nose and throat surgery testified as an expert in behalf of the plaintiff. The defendant's objection to this evidence is that Dr. Austin had never been in Peoria nor practiced in the Peoria area, and therefore, a standard of surgical procedure in that community was not established. Austin testified that there was a standard applicable to the specialty generally and such a standard prevailed in the central Illinois area. This testimony was supported by that of Dr.

Alcocer, a surgeon practicing in Peoria, whose testimony concerning the applicable standard was quite similar to that of Dr. Austin.

Dr. Austin stated that although he though the surgery was necessary for the plaintiff's welfare, it was risky procedure to remove skin with a curette from the region of the facial nerve, especially without the use of a surgical microscope. He noted it is a standard operation to leave cholesteatoma in the area of the nerve and the end state of the surgery would be the same whether or not the skin is removed.

Dr. Alcocer, who testified on behalf of both parties, was called into the operating room by the defendant to help repair the nerve, bringing with him a surgical miscroscope. He testified that he would never perform a mastoid surgery of the type in this case without a surgical microscope. It is extremely beneficial in allowing a surgeon to perform accurately. He also stated that when granulated tissue is found on or about the nerve, he would not remove these granulations because of the possibility of injury to the nerve. The mere opening of the ear to release the pressure would be a sufficiently beneficial result of the surgery. See Annotation, 76 *ALR2d* 783.

It was Dr. Howard's testimony supported by other medical evidence, that an injury to the cranial nerve could be considered an ordinary or incidental result of the surgery even when performed skillfully.

■■ There is a substantial conflict of medical evidence and the verdict in favor of the plaintiff is supported by ample evidence. We are of the opinion that the plaintiff established his case by sufficient evidence and that the trial court did not error in denying the defendant's motion for judgment notwithstanding the verdict. The test established by *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504, was not met by the defendant.

Since the plaintiff presented evidence of both failure to comply with the standard and a resulting injury, it was proper to submit the disputed facts concerning the defendant's negligence to the jury.

On the authority of *Howell v. Briney*, 125 Ill.App.2d 246, 260 N.E.2d 858 and *Carter v. Winter*, 32 Ill.2d 275, 204 N.E. 755, defendant insists that plaintiff was guilty of contributory negligence as a matter of law. Without discussing this issue in any particular detail, we believe it sufficient to say that neither of the foregoing cases is a medical malpractice case and the application of the general rule in such cases offers no support for the claim that plaintiff is contributorily negligent as a matter of law. Plaintiff was unconscious at the time of the surgery and it is the injury to the cranial nerve during surgery which is the gist of plaintiff's cause of action.

6

Defendant contends his motion for a new trial was improperly denied. The trial errors which he alleges are refusal to give certain instructions, admission of testimony by plaintiff's mother and admission of evidence of the surgical microscope.

██ In the original complaint, it was alleged the defendant had caused an impairment to plaintiff's hearing and also had failed to obtain the informed consent of the plaintiff. At the close of plaintiff's evidence, an amended complaint was filed which excluded any reference to either of these issues. The trial court ruled that the evidence was insufficient to support such issues and consequently they were withdrawn as issues in the trial and no reference was thereafter made to them. Nevertheless the defendant tendered instructions which in substance requested the trial court to advise the jury in the instructions that evidence regarding such issues was not to be considered. Having reviewed the testimony and arguments of the parties, we are of the opinion that the trial court properly exercised its discretion in refusing such instructions. When instructions frame the issues supported by the evidence presented by both sides, the jury is adequately instructed without instructions as to what are not issues in the case.

██ During direct examination of the plaintiff's mother while she was testifying on plaintiff's behalf, the following question was asked:

"Now Mrs. Livengood, had you known or were you advised by Dr. Howard there was a risk to the 7th cranial nerve of your son, would you have consented to the operation?"

Mrs. Livengood answered, "No sir". The defendant objected to the question and answer on grounds that it was an expression of an opinion on an ultimate fact. We agree that the objection was proper and should have been sustained. Since, however, the testimony related to the issue of informed consent which was later removed from the case, there could be no prejudice resulting to the defendant.

██ Another error which defendant alleges is that he was prejudiced by plaintiff's repeated reference to the surgical microscope during the trial. It is argued that the defendant's failure to have or use a surgical microscope had no relation to the defendant's alleged lack of skill and was therefore prejudicial to him. We are unable to understand in view of the testimony how the defendant can believe that such evidence is unduly prejudicial, because evidence of the microscope and its use were directly related to the ordinary and customary procedure prevailing in the specialty. Defendant was not charged with a failure to use a surgical microscope rather reference to its absence was an incident to a description of skill which defendant could and should have exercised.

██ Finally, the defendant contends the verdict for $50,000 was ex-

cessive and against the manifest weight of the evidence. The evidence on the issue of damages, which was uncontradicted, showed although the paralysis on the left side of the plaintiff's face had improved there was still approximately a 20 percent paralysis which would remain permanent. His face still drooped, his eye watered and was blurry and he could not read for any length of time. It is the jury who determines the amount of damages to be awarded to compensate for injury to a plaintiff (*Parnham v. Carl W. Linder Co.*, 36 Ill.App.2d 224, 183 N.E.2d 744) and a reviewing court may not alter this determination unless the size of the verdict clearly indicates that the jury was moved by prejudice or passion. (*Tomlinson v. Chapman*, 24 Ill.App.2d 192, 164 N.E.2d 240.) We conclude that the jury's verdict, although substantial, was not the result of passion or prejudice and that evidence was sufficient to support the finding of the jury.

For the foregoing reasons, the judgment of the Circuit Court of Peoria County is affirmed.

Judgment affirmed.

DIXON and SCOTT, JJ., concur.