MARIA KWAK, Adm'r of the Estate of Franciszek Kwak, Deceased, Plaintiff-Appellant, v. ST. ANTHONY DE PADUA HOSPITAL et al., Defendants-Appellees.

First District (5th Division)    No. 76-1210

Opinion filed November 10, 1977.

720

Walter M. Ketchum, Ltd., of Chicago (James P. Whitney, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith and E. Michael Kelly, of counsel), for appellee St. Anthony De Padua Hospital.

French & Rogers, of Chicago (Richard G. French and Timothy G. Keating, of counsel), for appellee Lawrence A. Sadlek.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff brought this action sounding in medical malpractice for the wrongful death of Franciszek Kwak (decedent). Prior to trial, the trial court granted St. Anthony's motion for summary judgment and, after the close of plaintiff's case, directed a verdict in favor of Dr. Sadlek. Plaintiff appeals each of these judgments and contends that the trial court erred in failing to dismiss the cause as having been settled, in granting St. Anthony's motion for summary judgment and in directing the verdict in favor of Sadlek. Defendants have moved for dismissal of this appeal for the alleged failure of plaintiff to file a timely notice of appeal. This motion was taken with the case and is considered later in this opinion.

It appears that on August 1, 1970, decedent fell and injured his head while at work and was taken home by two co-workers. After vomiting and complaining of a headache through the evening, at approximately 10 p.m. he was taken to the emergency room of St. Anthony's Hospital (the hospital), where he was admitted. Defendant Sadlek was the attending physician. The results of a battery of tests showed that decedent's skull was not fractured but that he was suffering from pneumonia. Accordingly, keflin (a potent antibiotic) was administered intravenously, but this treatment was discontinued when his temperature and blood count reduced to a normal level. Thereafter, he was given pollicillin (another antibiotic) which was administered orally, and he remained in the hospital until August 11. During the last four days of his stay, his temperature remained normal, he was ambulatory, he ate well, and he

had no specific complaints such as headaches. Upon his release, he was given antibiotics and told to return for a follow-up examination at Sadlek's medical center and also told that he could return to work. During the next two days, he worked full shifts and, when he returned home, ate well. On the evening of August 14, he visited Sadlek at his medical office but, at that time, complained only of a cough. At midday on Saturday, August 15, decedent again became ill at work, and one of his adult daughters was called. Upon arrival, she found decedent vomiting and lying on some boxes. She and one of his coworkers then took him to Sadlek's office. They had to assist him, as he was having difficulty with his vision and in walking. Once there, decedent and his daughter were called into Sadlek's office ahead of an unspecified number of people who were present in the waiting room. Suspecting the development of a subdural hematoma due to his symptoms and his history of a head injury, Sadlek told him he would have to be hospitalized. While Sadlek testified that decedent refused hospitalization and that he administered an injection of demerol and gave him talwin capsules (each being pain suppressants), the daughter testified that decedent was given the injection and pills and was told only to return home for bed rest.

While those members of decedent's family who testified were in agreement that decedent continued to have headaches and to vomit after the Saturday visit with Sadlek, there is disagreement as to when they first noticed a stiffening in decedent's gait, which eventually developed into paralysis on Tuesday morning. It is clear, however, that the first signs of stiffening occurred after the Saturday visit to the doctor and that the family did not call Sadlek to report this development or bring decedent to the office for another examination. Instead, on Tuesday morning (August 18), two hours before his death, decedent was brought back to the hospital. An autopsy report attributed his death to meningitis and pneumonia.

At trial, plaintiff presented medical evidence by calling Sadlek under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60) and Dr. William Fitzsimmons as her sole medical witness. Fitzsimmons's direct testimony was based upon his review of a limited number of hospital records supplied to him years earlier when he was called to testify before the Industrial Commission, where a claim had been filed for benefits because of decedent's death. On this basis, he opined that Sadlek's care of decedent had deviated from the community standard of good medical care, in that a third blood count and tests such as a bronchoscopy or bronchiolgram were not ordered prior to releasing decedent from the hospital on August 11 and in not warning his family on August 15 that he would die if not hospitalized. However, responding to hypothetical questioning during cross- and re-cross-examination, he

agreed that, by releasing decedent on the 11th with antibiotics and orders to return for follow-up care, Sadlek complied with the community standard of good medical practice; that an additional blood count would have told Sadlek nothing more than he already knew; *i.e.*, decedent was responding well to treatment, but the infection was not entirely cleared up; that performing a bronchoscopy or bronchiolgram would have been provident, but a failure to so test did not deviate from the applicable standard of care; and that on Saturday, August 15, the symptoms which decedent exhibited, considered in the light of his history of head injury, indicated to him (as it did to Sadlek) the possible development of a subdural hematoma, requiring hospitalization. Only in his belief that Sadlek should have warned the family to take decedent to a hospital or risk his death was Fitzsimmons's opinion in conflict with that of Sadlek.

Fitzsimmons also testified that in his opinion the introduction of the pneumonia bacteria into the bloodstream caused the meningitis which in turn resulted in death. It was his further opinion that decedent developed meningitis sometime between August 11 and 18, but he was not asked whether the condition resulted from any act or omission on the part of Sadlek.

OPINION

In this cause, the motion for summary judgment was granted and the hospital dismissed as a party on January 26, 1976. Included in the order was the trial court's statement that no just reason existed to delay enforcement or appeal from the order. Thereafter, on January 29, 1976, at the close of plaintiff's case, a directed verdict was entered in favor of Sadlek. On February 23, 1976, plaintiff filed a motion to extend time for filing post-trial motions as to both orders, but an extension was not granted until March 10, 1976. The post-trial motions were then filed on March 18, 1976, and denied on June 7, 1976. The notice of appeal was filed on July 7, 1976. Defendants contend that the notice of appeal was not timely filed, because the post-trial motions were untimely. We agree.

Supreme Court Rule 303 provides in pertinent part:

"(a) Time. Except as provided in paragraph (b) below, the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely post-trial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the entry of the order disposing of the motion." (Ill. Rev. Stat. 1975, ch. 110A, par. 303(a).)

Section 68.1(3) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 68.1(3)) provides:

"(3) Post-trial motions must be filed within 30 days after the entry of judgment or the discharge of the jury, if no verdict is reached, or within any further time the court *may allow within the 30 days* or any extensions thereof." (Emphasis added.)

The failure to timely file a post-trial motion deprives the trial court of jurisdiction to entertain that motion, and the failure to file a timely notice of appeal deprives the appellate court of jurisdiction to consider the merits of the appeal. (*E.g., Huber v. Maggio* (1975), 31 Ill. App. 3d 624, 333 N.E.2d 270; *Stauffer v. Held* (1974), 16 Ill. App. 3d 750, 306 N.E.2d 877.) Here, although a motion was made within 30 days to extend the time to file post-trial motions, none was actually filed within the 30-day period required by Supreme Court Rule 303(a), nor was any order entered extending the time within the 30 day period as provided in section 68.1(3). Plaintiff nonetheless contends that the post-trial motions and the notice of appeal were timely filed, relying on *Krotke v. Chicago, Rock Island & Pacific R.R. Co.* (1974), 26 Ill. App. 3d 493, 327 N.E.2d 212. In *Krotke,* both sides entered into and executed a stipulation to the effect that the time in which to file post-trial motions was to be extended to and including a certain date. The stipulation was not, however, filed with the trial court until the 31st day after judgment. After noting that "[t]he statute imposing a time limitation within which a party must file his post-trial motion is not inconsistent with the inherent power of courts of general jurisdiction to enter orders modifying or vacating their judgments pursuant to the express consent and agreement of all the interested parties" (26 Ill. App. 3d 493, 496, 327 N.E.2d 212, 215), this court found that in view of the stipulation the judgment could no longer be viewed as final in nature under section 68.1(3). Therefore, the post-trial motion filed within the extension allowed by the trial court and the notice of appeal which followed the disposition of the motion were timely under Supreme Court Rule 303.

Here, to the contrary, the parties did not enter into a stipulation, such as in *Krotke,* which affected the finality of the judgments and accordingly did not give rise to the inherent powers of the court. As the judgments of January 26 and 29 were at all times final, the jurisdiction of the trial court could be extended beyond February 25 and 28 only if prior to these dates a post-trial motion had been filed or the trial court had allowed an extension of time within which to file such motion. Plaintiff having accomplished neither prior to February 25 and 28, the trial court was without jurisdiction to entertain her motion on March 10.

Although *dehors* the record, plaintiff claims that the trial judge was out of town attending the funeral of his brother at the time her motion for an extension was filed; however, even assuming this to be true and further assuming that no substitute judge was made available to

consider the motion, a remedial procedure was available in that she could have petitioned this court to file a late notice of appeal under Rule 303(e). (*Huber v. Maggio.*) Having not pursued such a course, plaintiff deprived this court of jurisdiction to hear the merits of the cause.

Having reached a determination that this appeal is not properly before us, we are under no obligation to discuss the substantive merits of this case, "but we feel this case is one where we might, with profit, set forth an alternative ground for the decision we have reached, for on substantive grounds alone, the opinion of the lower court must be affirmed." *Berber v. Hass* (1965), 57 Ill. App. 2d 109, 116, 207 N.E.3d 96, 100.

■■ Plaintiff first contends that the trial court erred in not summarily dismissing the suit as having been settled. We disagree. While a suit is pending before it, the trial court may, when it finds a knowing meeting of the minds of the parties and absent a request for a hearing, summarily enforce an oral settlement agreement (*Sheffield Poly-Glaz, Inc. v. Humbolt Glass Co.* (1976), 42 Ill. App. 3d 865, 356 N.E.2d 837), but such a disposition is inappropriate where substantial questions are presented relating to the formation and terms of the purported agreement (*Janssen Brothers, Inc. v. Northbrook Trust & Savings Bank* (1973), 12 Ill. App. 3d 840, 299 N.E.2d 431).

■■ Plaintiff petitioned the court for an order dismissing the case as having been settled and attached the affidavit of her attorney, stating: at a pretrial conference, Sadlek's attorney had made an offer of $15,000 on behalf of both attorneys to settle the case; that the offer was communicated to the pretrial judge, who asked that it be communicated to the plaintiff; that the settlement offer was discussed with the plaintiff and, on the continued date of the pretrial conference, the court and the attorneys were advised that the offer was accepted; and that the attorneys for the defendants informed the court that they could offer only $10,000 and that there was a dispute between them as to their respective contributions to the gross settlement. Plaintiff contends the summary denial without a hearing of her petition was error, but she has filed neither a verbatim report of the pretrial proceedings nor an approved report of those proceedings under Supreme Court Rule 323(c) (Ill. Rev. Stat. 1975, ch. 110A, par. 323(c)).

> "Where the record is incomplete, a reviewing court will indulge every reasonable presumption favorable to the judgment, order or ruling appealed from. It will presume that the missing portion contained that which justified the action of the court. Any doubt arising from the incompleteness of the record will be resolved against the appellant. [Citations.] A party prosecuting an appeal must furnish a record sufficient to establish reversible error. [Citation.]" (*Sandberg v. American Machining Co.* (1975), 31 Ill. App. 3d 449, 452, 334 N.E.2d 246, 248.)

Here, the trial judge heard pretrial negotiations, was present when the purported settlement discussions were had, and plaintiff neither alleged that additional information would have been offered to the trial court had a hearing been held nor objected to the failure to hold a hearing. Under the circumstances, we cannot but assume that matters, not included in the record and known to the pretrial judge, were the basis of his apparent conclusion that an agreement had not been reached. Thus, we cannot say that the trial court erred in refusing to dismiss the cause as having been settled.

Plaintiff next contends that the trial court erred in granting summary judgment in favor of the hospital. Her position is that the trial court erred in not affording her a reasonable time to respond to the motion for summary judgment. (Ill. Rev. Stat. 1975, ch. 110, par 57; *M. T. Deaton v. Lloyd's Jewelry Co.* (1972), 7 Ill. App. 3d 926, 289 N.E.2d 123.) On appeal, the ultimate question is not whether the proceedings below were error free, but whether error was committed which operated to prejudice the appellant or unduly affected the outcome. *Bruske v. Arnold* (1969), 44 Ill. 2d 132, 254 N.E.2d 453, *cert. denied* (1970), 398 U.S. 905, 26 L. Ed. 2d 65, 90 S. Ct. 1697.

■■■ We note that "[t]he general rule in a malpractice case is that the plaintiff has the burden to prove the proper standard of care imposed upon the defendant and then to prove by affirmative evidence an unskilled or negligent failure to comply with the standard and a resulting injury. [Citations.]" (*Livengood v. Howard* (1973), 11 Ill. App. 3d 1, 4, 295 N.E.2d 736, 738.) Unless the matter is within the ken of the layman, to establish a prima facie case, expert medical testimony is necessary to show a lack of care which caused the injury. (*Graham v. St. Luke's Hospital* (1964), 46 Ill. App. 2d 147, 196 N.E.2d 355.) The standard of care owed by a physician or surgeon is that degree of knowledge, skill and care which a good physician or surgeon in the same or similar community or hospital would bring to a similar case under like circumstances. *Borowski v. Von Solbrig* (1973), 14 Ill. App. 3d 672, 303 N.E.2d 146, *aff'd* (1975), 60 Ill. 2d 418, 328 N.E.2d 301.

■■ Where there is no genuine issue as to any material fact, a motion for summary judgment should be granted and, in determining whether such an issue exists, the trial court should consider the affidavits, depositions, admissions, exhibits and pleadings in the case. (Ill. Rev. Stat. 1975, ch. 110, par. 57; *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847; *Allen v. Meyer* (1958), 14 Ill. 2d 284, 152 N.E.2d 576.) However, the unsupported allegations in opponent's complaint cannot raise factual issues where the affidavits and depositions which support the motion for summary judgment are to the contrary. *Carruthers v. B. C. Christopher &*

*Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457; *Ohio Oil Co. v. Yacktman* (1976), 36 Ill. App. 3d 255, 343 N.E.2d 544.

■■ Here, while the motion for summary judgment was filed, with the notice requirement waived by plaintiff, on the same date that she filed her response, there is nothing in the record to indicate that this was caused by judicial coercion. We note also that there appears to have been no objection to a hearing on the motion being held the same day. In her motion to vacate the summary judgment, plaintiff indicates that the response to the motion was composed during the court's "noon break"; however, it does not appear that she was compelled to take such a quick action, nor is there any indication that she requested additional time. Moreover, the motion was properly granted, as the deposition testimony of plaintiff's medical expert established that the discharge of a patient is a medical decision for the attending physician rather than the hospital and, further, after reviewing the hospital chart for the two admissions and based upon his skill and knowledge as a physician, plaintiff's expert stated that he had no specific criticism of the care, treatment, or assistance rendered by any hospital personnel during decedent's August 1 to 11 stay at the hospital. The only matter forwarded in opposition to the motion appears in a bill of particulars filed by plaintiff pursuant to an order of court, wherein she alleged negligence in preparation of an X-ray report during decedent's hospitalization. This matter was contradicted by her expert's testimony, and there was no other testimony that any such negligence was, as alleged by plaintiff, "a causal factor" in bringing about the death of decedent. (See *Carruthers v. B. C. Christopher & Co.*) Therefore, based upon all the facts and circumstances, we do not believe the trial court erred in granting the hospital's motion for summary judgment.

■■ Plaintiff next contends that the trial court erred in directing a verdict in Sadlek's favor at the close of her case. The criteria in this regard was expressed in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14:

> "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

Here, plaintiff's expert witness was initially of the opinion that Sadlek deviated from the applicable standard of care in failing to order further tests prior to defendant's discharge from the hospital on August 11. However, after being apprised on cross-examination of the data revealed by all of the records of the hospital and Sadlek, plaintiff's expert agreed that decedent's treatment by Sadlek comported with the applicable

standard of care except that he criticized the failure of Sadlek to warn decedent's family that death might result if he were not hospitalized.

In this regard, Sadlek, testifying from his record, stated that decedent had refused hospitalization at the time of his last office visit, and the criticism of plaintiff's expert witness was only that Sadlek should have insisted upon hospitalization at that time. There was no testimony from the expert witness, nor was it otherwise established in the record that the failure of Sadlek to insist on hospitalization was a deviation from the required standard of medical care and, more importantly, even assuming that such a failure was a deviation, it was not causally connected to decedent's death. To establish a prima facie case of malpractice, it must be affirmatively shown that there was a deviation from the applicable standard of care and that the deviation caused the injury or death complained of. (*Livengood v. Howard; Graham v. St. Luke's Hospital.*) If either element is lacking in the proof, no case is presented for the consideration of the trier of fact. (*Wade v. Ravenswood Hospital Association* (1954), 3 Ill. App. 2d 102, 120 N.E.2d 345.) In the instant case, plaintiff's expert was not asked whether in his opinion the failure of Sadlek to warn decedent's relatives that he might die if not hospitalized was a deviation from the applicable standard. The only deviation testified to by the expert was the failure to take a blood count and do certain tests when decedent was released from the hospital. However, after being informed that at the time of his release decedent had been given antibiotics, with an order for follow-up care at the doctor's office, the expert gave an opinion that Sadlek had conformed to the required standard of medical care.

■■ Thus, as we view the record, there is no proof of a negligent deviation which was the cause of the death of decedent, and we are of the opinion that either under the rule of *Pedrick* or on the basis that a prima facie case was not established (*Livengood v. Howard; Graham v. St. Luke's Hospital; Wade v. Ravenswood Hospital*), the trial court did not err in directing a verdict in favor of Sadlek.

Because of the possibility of further appeal, we have reviewed the substantive matters involved in this appeal and, in the light of the foregoing, had we jurisdiction, we would affirm the decision of the trial court. However, in view of our holding above, that the appeal was not properly before us because of the failure to file a timely notice of appeal, we must dismiss the appeal.

Appeal dismissed.

MEJDA and WILSON, JJ., concur.